SOL LUIS DESCARTES, TESORERO DE PUERTO RICO, peticionario, *v.* TRIBUNAL DE CONTRIBUCIONES DE PUERTO RICO, demandado; CARMELINA CERRA VDA. FERNÁNDEZ GARCÍA, ETC., interventora.

Número 284.
*Sometido:* 14 de noviembre de 1952. *Resuelto:* 13 de abril de 1953.

---

Hon. *Procurador General Víctor Gutiérrez Franqui* y *Manuel J. Medina Aymat, Procurador General Auxiliar,* abogados del peticionario; *Juan A. Faría,* abogado de la interventora, querellante en el pleito principal.

El Juez Asociado Señor Pérez Pimentel emitió la opinión del tribunal.

Carmelina Cerra Viuda de Fernández García radicó ante el anterior Tribunal de Contribuciones de Puerto Rico una querella contra Sol L. Descartes, Tesorero de Puerto Rico, alegando que ella es la administradora judicial de la Sucesión del Dr. Eugenio Fernández García quien falleció el 27 de mayo de 1946; que el Dr. Fernández García era dueño de una propiedad sita en la calle San Francisco número 25 de San Juan, la cual adquirió por la suma de $18,000; que en 5 de febrero de 1946 el Gobierno de Puerto Rico inició procedimiento de expropiación forzosa en relación con dicha propiedad y depositó en corte como su estimado de compensación justa y razonable la suma de $30,000; que en 5 de marzo de 1946 un arrendatario de la referida propiedad, Manuel García, solicitó intervención en dicho pleito de expropiación reclamando daños y perjuicios en la cantidad de $16,462.17 sufridos con motivo del ameritado procedimiento; que en 23 de octubre de 1946 el subarrendatario Arturo Torres también intervino en dicho pleito; que antes de fallecer el doctor Fernández García radicó una contestación a la demanda de expropiación alegando un justo precio de la propiedad de $50,000; que en 6 de mayo de 1949 se dictó sentencia en ese pleito fijándose una justa compensación de $32,000 de los cuales se adjudicó a la propiedad la suma de $31,500 y al arrendatario interventor Manuel García la suma de $500; que dicha sentencia fué firme en 5 de junio de 1949. Alegó además, que el día 26 de enero de 1950 la demandante como administradora judicial de los bienes de la Sucesión del doctor Eugenio Fernández García solicitó del Tesorero de Puerto Rico permiso para establecer un Fondo de Reposición en relación con el inmueble expropiado, permiso éste que fué denegado por el Tesorero en 9 de mayo de 1950 por la razón de que ya habían transcurrido más de cuatro años desde la fecha

de la expropiación forzosa. La querella termina con la súplica de que se resuelva que el Tesorero de Puerto Rico abusó de su discreción al denegar la solicitud para establecer el Fondo de Reposición y que en su consecuencia se ordene al querellado permitir a la querellante establecer dicho fondo.[1]

El Tesorero querellado solicitó la desestimación de dicha querella basándose en que (*a*) el Tribunal de Contribuciones carecía de jurisdicción para entender en el caso porque la actuación del Tesorero al denegar el establecimiento del Fondo de Reposición no era revisable por dicho tribunal; (*b*) porque la acción interpuesta por la querellante era prematura ya que aún no había surgido una controversia judicial que pudiera dar margen a una resolución de aquel tribunal y (*c*) porque la demandante carecía de personalidad jurídica para comparecer ante el Tribunal.

El tribunal a quo declaró sin lugar en todas sus partes dicha moción de desestimación y entonces el querellado contestó aceptando los hechos esenciales de la querella a excepción de que alegó en contrario que en 5 de febrero de 1946 el dinero de la expropiación fué puesto a disposición del doctor Eugenio Fernández García, y que fué en 4 de abril de 1950 y no en 26 de enero de dicho año que la demandante solicitó del Tesorero permiso para establecer el Fondo de Reposición. Además reprodujo las defensas que había levantado anteriormente en su moción de desestimación y como materia nueva de oposición alegó que simultáneamente con la denegatoria para el establecimiento del Fondo de Reposición el Tesorero

---

[1] La creación de dicho fondo de reposición lo autoriza la sección 6*b* (5) de la Ley de Contribuciones sobre Ingresos, Ley núm. 74 de 6 de agosto de 1925, Leyes de Puerto Rico—1925, pág. 401, según ha sido enmendada. El procedimiento a seguir para lograr el establecimiento del mismo lo señala la sección 31 del Reglamento de la Ley de Contribuciones sobre Ingresos promulgado por el Tesorero. El propósito de esas disposiciones es evitar el pago de la contribución sobre ingresos por ganancias obtenidas en casos en que, como el presente, ha habido una conversión involuntaria de propiedad. Véase, al efecto, *Francis* v. *Du Pont et al.*, 31 B.T.A. 278.

notificó a la demandante una deficiencia aumentándole los ingresos declarados en la suma de $13,581.39 por concepto de beneficios en la expropiación mencionada y que de esta notificación de deficiencia la demandante solicitó reconsideración administrativa estando el asunto pendiente al radicarse la querella.

Posteriormente la querellante radicó en el tribunal a quo una moción alegando que a pesar de la resolución dictada por dicho tribunal declarando sin lugar la moción de desestimación presentada por el Tesorero, éste le notificó, con fecha 23 de agosto de 1941, una deficiencia definitiva por la suma de $12,778.82 fundada en la ganancia obtenida en la venta de la propiedad objeto del procedimiento de expropiación forzosa. Esta moción terminaba con la súplica de que se ordenara al Tesorero dejar sin efecto ni valor alguno la indicada noticación de deficiencia hasta tanto el tribunal resolviera el litigio y sin perjuicio de que el Tesorero hiciera una nueva notificación de deficiencia en caso de que el tribunal desestimara su querella. El mismo día señalado para el juicio en los méritos el tribunal a quo declaró con lugar la anterior moción y ordenó que la susodicha notificación de deficiencia quedara en suspenso hasta que se dictara sentencia en el caso.

Las partes sometieron el caso por las alegaciones, presentando como única prueba la comunicación del Tesorero a la demandante fechada en 9 de mayo de 1950 denegando permiso para establecer el Fondo de Reposición. Dicha comunicación lee así:

"Sucn. Dr. E. Fernández García
Apartado Núm. 18
Hato Rey, Puerto Rico

> Re: Solicitud para establecer
> Fondo de Reposición.

"Señores:

"En contestación a su petición de epígrafe se les informa que esta oficina deniega dicha solicitud, toda vez que ya han trans-

currido más de cuatro años desde la fecha de la expropiación forzosa y por lo tanto no pueden acogerse a las disposiciones de la Sección 6 (b-5) de la Ley de Contribuciones sobre Ingresos.

"Atentamente,

"Tesorero de Puerto Rico

"Por: (Fdo.) Antonio Laloma, Jr.

"Jefe del Negociado"

Más tarde el tribunal a quo dictó sentencia declarando con lugar la querella y anuló la determinación del Tesorero negándose a conceder permiso a la contribuyente Sucesión del doctor Eugenio Fernández García para establecer el Fondo de Reposición y además dejó sin efecto la notificación tentativa de deficiencia hecha con motivo de dicha negativa.

A solicitud del Tesorero expedimos un auto de *certiorari* para revisar la referida sentencia. Sostiene el peticionario que el tribunal recurrido cometió los siguientes errores:

"1. Resolver que la peticionaria tiene capacidad jurídica para demandar en el presente caso.

"2. Resolver que tiene jurisdicción para entender en el presente caso.

"3. Resolver que la acción interpuesta por la querellante no es prematura.

"4. Resolver que el peticionario actuó erróneamente al negarse a conceder permiso para el establecimiento del fondo de reposición.

"5. Dejar sin efecto, sin facultad para ello, la determinación tentativa de deficiencia notificada por el peticionario a la querellante, simultáneamente y como resultado de su negativa a permitir la creación del fondo de reposición."

■ Discutiendo el primer error arguye el peticionario que no expresándose en la querella los nombres de las personas que componen la sucesión del doctor Eugenio Fernández García, la interventora carecía de personalidad jurídica para comparecer ante el tribunal a quo. En apoyo de su contención invoca el caso de la *Sucesión del Dr. Eugenio Fernández García, etc.,* v. *Tribunal de Contribuciones de Puerto Rico, Rafael Buscaglia, Tesorero de Puerto Rico, Interventor,* re-

suelto *per curiam* en 7 de junio de 1949. En dicho caso nos ratificamos una vez más en que es doctrina firmemente establecida la de que la Sucesión como persona jurídica no existe en nuestro derecho. En consecuencia para que una Sucesión pueda demandar o ser demandada, es necesario que se particularice o individualice expresando los nombres de los miembros que la componen ya que son éstos y no la Sucesión los que deben aparecer como demandantes o demandados. *Sucn. Belaval* v. *Acosta*, 64 D.P.R. 109.

La doctrina expuesta anteriormente no es aplicable al caso ante nosotros. Aquí la demandante es Carmelina Cerra Viuda de Fernández García, administradora judicial de la Sucesión del doctor Eugenio Fernández García, y no la Sucesión. Como tal administradora ella tiene el deber de representar al finado en todos los procedimientos comenzados por o contra el mismo antes de su muerte, y los que se promovieran después por o contra el caudal de la herencia. Artículo 584 del Código de Enjuiciamiento Civil (ed. 1933). En la sucesión intestada esta representación es exclusiva hasta tanto recaiga la declaración de herederos. Desde entonces, y lo mismo ocurre en la sucesión testamentaria, el administrador judicial, por la representación que le concede la ley, y los herederos, como partes realmente interesadas deben actuar conjuntamente en todos los litigios que se promuevan en favor o en contra del caudal hereditario. *Franceschi* v. *Corte*, 45 D.P.R. 666. En el presente caso sin embargo, el peticionario no demostró ante el tribunal a quo que para la fecha de la radicación de la querella ya había recaído tal declaración de herederos o que el causante había fallecido bajo una válida institución de herederos testamentaria. A falta de demostración de estos hechos la interventora podía demandar por sí sola. Además, la Regla 17 (c) de las de Enjuiciamiento Civil autoriza al administrador a demandar sin el concurso de las personas en cuyo beneficio se ejercita la acción.

El primer error no fué cometido.

■■ Los errores segundo y tercero pueden discutirse conjuntamente ya que la cuestión planteada por ambos errores es la misma, a saber, la falta de jurisdicción del tribunal sentenciador.

Sostiene el Tesorero peticionario que su decisión denegando permiso a la contribuyente para establecer el fondo de reposición no era apelable para ante el Tribunal de Contribuciones de Puerto Rico. Arguye que no obstante la jurisdicción amplia y exclusiva que confiere a dicho tribunal la ley de su creación—Ley núm. 328 aprobada en 13 de mayo de 1949 ( (1) pág. 997)—para conocer de todos los casos, acciones, procedimientos o recursos especiales o extraordinarios relacionados con, o que afecten, la imposición, cobro y pago de toda clase de contribuciones, (2) el procedimiento para hacer efectiva esa jurisdicción está señalado por la Ley núm. 235, aprobada en 10 de mayo de 1949 ( (1) pág. 733), y que en cuanto a la contribución sobre ingresos solamente puede apelarse (1) de una determinación final de deficiencia notificada en la forma provista en la sección 57 (a) de la Ley de Contribuciones sobre Ingresos de 1924 (pág. 401), y (2) de una determinación final denegando una reclamación de reducción, notificada en la forma provista en la sección 62 (b) de dicha

(2) El artículo 2 de dicha Ley núm. 328 de 1949, en lo pertinente dispone que:

"Artículo 2.—Además de la jurisdicción conferídale por leyes especiales, el Tribunal de Contribuciones de Puerto Rico tendrá jurisdicción, de carácter exclusivo, para conocer de todos los casos, acciones, procedimientos o recursos especiales o extraordinarios relacionados con, o que afecten, la imposición, cobro y pago de toda clase de contribuciones incluyendo contribuciones sobre la propiedad, contribuciones sobre herencia y donaciones, contribuciones sobre ingresos, contribuciones sobre enriquecimiento injusto, contribuciones de seguro social, arbitrios, licencias y cualesquiera otras contribuciones o impuestos, así como para conocer de las reclamaciones de contribuciones cobradas por un procedimiento ilegal, o que voluntariamente o sin notificación del Tesorero de Puerto Rico se hubieran pagado indebidamente o en exceso, cuyo reintegro esté autorizado por ley y haya sido rehusado por el Tesorero de Puerto Rico; *Disponiéndose, sin embargo,* que esta jurisdicción no podrá invocarse ante el Tribunal por persona alguna, hasta que sobre el asunto en discusión haya recaído la correspondiente resolución administrativa por parte del Tesorero de Puerto Rico, de acuerdo con la ley; ..."

ley. (³)    Arguye además que no tratándose en este caso de ninguna de esas dos actuaciones, la contribuyente recurrió prematuramente ante el Tribunal de Contribuciones.

Si hemos entendido bien, la contención del Tesorero es al efecto de que la contribuyente solamente podía litigar la resolución denegando permiso para establecer el fondo de reposición, dentro del recurso de apelación que se interpusiera contra la determinación final de deficiencia que se notificara a dicha contribuyente.    Discrepamos.    El procedimiento exclusivo establecido en el artículo 2A de la Ley núm. 235 de

---

(³) El artículo 2A de la Ley núm. 235 de 1949, dispone que cuando un contribuyente no estuviere conforme con una determinación notificádale por el Tesorero de Puerto Rico, y tuviere derecho por ley a apelar de la misma, deberá hacerlo en la forma, dentro del término y previo el cumplimiento de los requisitos que a continuación expresa dicho artículo.    En cuanto a la contribución sobre ingresos, estos requisitos son los que establece el inciso primero de dicho artículo.    Dicho inciso lee así:

"1.—*Contribución sobre Ingresos.*

"De una determinación final de deficiencia notificada en la forma provista en la Sección 57(a) de la Ley de Contribuciones sobre Ingresos de 1924, o de una determinación final denegando una reclamación de reducción, notificada en la forma provista en la Sección 62(b) de dicha Ley, radicando su demanda en el Tribunal de Contribuciones de Puerto Rico en la forma dispuesta por la Ley que crea dicho Tribunal, dentro del término de treinta (30) días, a partir de la fecha del depósito en el correo de la referida notificación de la determinación final del Tesorero de Puerto Rico, previa prestación de fianza a favor de éste y ante éste, sujeta a la aprobación de dicho funcionario, por el monto de la contribución notificada, más intereses computados por el período de un (1) año al tipo del seis por ciento (6%) anual; *Disponiéndose, sin embargo,* que el contribuyente podrá pagar la parte de la contribución con la cual estuviere conforme y litigar el resto de la misma ante el Tribunal de Contribuciones de Puerto Rico, en la forma antes dicha, previa prestación de la fianza antes mencionada, por el importe de la contribución que se litigue, más intereses computados por el período de un (1) año, al tipo del seis por ciento (6%) anual; y *Disponiéndose, además,* que cuando se apele de una determinación final del Tesorero de Puerto Rico denegando una reclamación de reducción, el contribuyente no tendrá que prestar la fianza requerida por este artículo si la fianza que se ha acompañado a la reclamación de reducción, a juicio del Tesorero, garantiza la contribución tasada hasta su completo pago; y *Disponiéndose, finalmente,* que tanto el término de treinta (30) días para recurrir ante el Tribunal de Contribuciones de Puerto Rico como la prestación de la fianza antes mencionada, en los casos en que ésta sea requerida, dentro del referido término de treinta (30) días, se considerarán de carácter jurisdiccional."

1949, se limita, en lo que respecta a la contribución sobre ingresos, a las dos actuaciones del Tesorero expresamente consignadas en dicho artículo, a saber, una determinación final de deficiencia o una determinación final denegando una reclamación de reducción.   En esos casos el procedimiento señalado en dicha ley es obligatorio.   Sin embargo, esa ley no fija procedimiento alguno para recurrir ante el Tribunal de Contribuciones de una resolución administrativa del Tesorero denegando permiso para establecer un fondo de reposición. En estos casos es la propia ley creando el Tribunal de Contribuciones, la que señala el procedimiento a seguirse.   Véase artículo 3 de la Ley núm. 328 de 1949.   Por otro lado, el lenguaje de esta Ley núm. 328 es tan amplio y abarcador, en cuanto a la jurisdicción conferídale al Tribunal de Contribuciones, que no permite en su interpretación, la exclusión de una acción como la interpuesta por la contribuyente.   En virtud de esa jurisdicción dicho Tribunal puede conocer de todos los casos, acciones, procedimientos, etc., *relacionados con, o que afecten*, la *imposición*, cobro y pago de toda clase de contribuciones, incluyendo desde luego, la contribución sobre ingresos.   Véase escolio 1.   El establecimiento de un fondo de reposición, según lo autoriza la sección 6 (*b*) (5) de la Ley de Contribuciones sobre Ingresos y el artículo 31 de su Reglamento, es el medio que tiene el contribuyente para evitar, cuando procediere, que se le reconozca una ganancia y en su consecuencia, que se le imponga una contribución.   Una negativa del Tesorero a permitir que se establezca tal fondo, trae como resultado el reconocimiento de esa ganancia y la imposición de la contribución.(⁴)   Tan *relacionada* está la decisión del Tesorero con la *imposición* de la contribución y de tal modo aquélla *afecta* a ésta, que de haber sido dicha decisión favorable a la contribuyente, el Tesorero no hubiera tenido base para imponer dicha contribución.   Lo que no podía hacer

---

(⁴) Efectivamente así ocurrió en este caso. El Tesorero denegó el permiso y simultáneamente notificó una deficiencia tentativa a la contribuyente.

la contribuyente, y esto fortalece nuestro razonamiento, era apelar para ante el Tribunal de Contribuciones hasta que en el asunto en discusión hubiera recaído la correspondiente resolución administrativa por parte del Tesorero. A estos fines dispone la ley creadora del Tribunal, en su artículo 2 que "Disponiéndose sin embargo, que esta jurisdicción no podrá invocarse ante el Tribunal por persona alguna, hasta que sobre el asunto en discusión haya recaído la correspondiente resolución administrativa por parte del Tesorero de Puerto Rico, de acuerdo con la ley; . . ." De la resolución administrativa del Tesorero denegándole permiso para establecer el fondo de reposición, fué que la contribuyente apeló para ante el Tribunal de Contribuciones.

Finalmente cabe señalar el hecho de que la Ley núm. 235, invocada por el Tesorero como la que señala el procedimiento exclusivo para recurrir al Tribunal de Contribuciones, no tiene el alcance de extender o limitar la jurisdicción de dicho Tribunal. A este efecto, el artículo 5 de la referida ley dispone:

"Artículo 5.—Esta Ley no será interpretada en el sentido de extender o limitar la jurisdicción o competencia del Tribunal de Contribuciones de Puerto Rico, ni los derechos concedidos u obligaciones impuestas por la ley a los contribuyentes, a El Pueblo de Puerto Rico, o a los funcionarios de El Pueblo de Puerto Rico."

Tampoco se cometieron los errores segundo y tercero.

El cuarto error señalado va a los méritos del caso. En sus conclusiones de derecho, el tribunal a quo señala que:

". . . . la decisión de este caso depende fundamentalmente de una cuestión de hecho o sea, en qué momento la Sucesión demandante recibió y tuvo la libre disposición del dinero proveniente de la expropiación, para que podamos determinar si ella cumplió con la Ley y el Reglamento o no, al efecto de establecer el fondo de reposición inmediatamente. Se alega en la demanda que en 5 de febrero de 1946 el Gobierno entabló la demanda de expropiación forzosa y depositó en Corte la compensación justa y razonable que estimó en la suma de $30,080, y se alega en la

contestación que en 5 de febrero de 1946 el dinero producto de la expropiación fué puesto a disposición del Dr. Eugenio Fernández García. El hecho sin embargo, de que en esa fecha se depositara el dinero en Corte no conduce forzosamente a la conclusión de que el contribuyente recibió en y tuvo a partir de esa fecha la libre disposición de ese dinero. Tan es así que se alega en la demanda que en 5 de marzo de 1946 un arrendatario intervino en el pleito reclamando $16,462.17 como daños por razón de la expropiación, y que en 23 de octubre del mismo año un subarrendatario también intervino aunque no sabemos en qué consistió dicha intervención. Surge también que no fué hasta el 6 de mayo de 1949 que el Tribunal de Expropiaciones dispuso de la intervención del arrendatario adjudicándole $500 de los $32,000 que finalmente fueron fijados como compensación, por sentencia que fué firme en 5 de junio de 1949. Estos hechos no los niega el Tesorero.

"No se desprende con toda claridad de esas alegaciones de la demanda si la intervención del arrendatario impedía o no el libre uso y disposición por parte de la contribuyente de la cantidad inicialmente depositada. En otras palabras, no se puede determinar con certeza si la reclamación del arrendatario iba contra la cantidad depositada, en cuyo caso la parte adversa realmente lo era la contribuyente, o si por el contrario la reclamación se hacía contra el Gobierno y en adición a lo depositado. Habiendo costado la propiedad $18,000 la ganancia prima facie obtenida tomando como base la compensación inicialmente depositada en 1946 era de $12,080. De haber tenido total éxito el arrendatario su reclamación de $16,462.17 podía haber absorbido la ganancia capital. Siendo así la contribuyente no podía estar en ese entonces en condiciones de disponer de dicha ganancia para fin alguno, ni para adquirir otra propiedad, ni para establecer un fondo de reposición. Tenía forzosamente que esperar el resultado del pleito de intervención. Si por el contrario, la reclamación del interventor era contra el Gobierno en adición a la cantidad depositada, ello no habría impedido que en 1946 la demandante hubiera hecho uso de la compensación y de la ganancia."

El peticionario impugna esas conclusiones y, por el contrario, alega que "desde el día 5 de febrero de 1946 en que El Pueblo de Puerto Rico entabló la demanda de expropiación y depositó en corte la compensación que estimó justa y razonable ($30,080), el Dr. Eugenio Fernández García tuvo la libre dis-

posición de dicha suma" y que éste debió solicitar inmediatamente a esa fecha la creación del fondo de reposición. No tiene razón. Ya hemos señalado que un arrendatario había intervenido en el pleito de expropiación reclamando $16,462.17 en daños y perjuicios provenientes de la misma. Esa reclamación de daños y perjuicios iba dirigida contra la cantidad depositada. Ello es así porque la suma depositada como compensación toma el lugar del inmueble. Puede, por lo tanto, un tercero que tenga una carga o gravamen o un interés sobre la propiedad lograr que dicha carga o gravamen o interés sea satisfecho de la suma depositada como compensación.[5] Véase Nichols, *On Eminent Domain*, Tomo 2, sección 5.3, pág. 50 y 5.74, pág. 84 (3ra. edición). Por lo tanto, era necesario que el Tribunal de Expropiaciones resolviera primero el caso y dictara su sentencia para que entonces el propietario pudiera pedir la distribución de la suma de acuerdo con los términos de la propia sentencia. *United States* v. *Certain Parcels of Land*, 40 F. Supp. 436. El peticionario alega que, aun aceptando esa doctrina, todavía resulta que la negativa del Tesorero estuvo bien fundada por cuanto que la sentencia del Tribunal de Expropiaciones fué firme el 5 de junio de 1949 y que no fué sino hasta diez meses después—en 4 de abril de 1950—que la Administradora Judicial solicitó el permiso para el establecimiento del fondo de reposición, resultando, pues, que no se siguió el mandato de la ley que exige que para que no sea reconocida la ganancia en un caso de expropiación forzosa, el dinero debe gastarse *inmediatamente*[6] en la ad-

---

[5] Como cuestión de realidad, el Tribunal de Expropiaciones fijó un justo valor a la propiedad en la suma de $32,000, de los cuales concedió al arrendamiento interventor $500.

[6] La sección 6 de la Ley de Contribuciones sobre Ingresos, dispone en lo pertinente, lo siguiente:

"Sección 6.—(*a*) En la venta o permuta de propiedad la suma total de la ganacia o pérdida, determinada de acuerdo con la sección 5, será reconocida, exceptuando lo que más adelante se dispone en esta sección.

"   .      .      .      .      .      .      .      .      .      .

"(5) Si la propiedad (como resultado de su destrucción en todo o en parte, de robo o confiscación o del ejercicio del poder de requisición

quisición de otra propiedad similar o relacionada en servicio o uso con la propiedad expropiada o en la adquisición del dominio de una corporación dueña de esa otra propiedad, o en el establecimiento de un fondo de reposición. La interventora alega, por su parte, que no habiendo sido hasta el 30 de diciembre de 1949 que se liquidara y pagara la contribución de herencia de los bienes relictos del doctor Fernández García, la petición para la creación del fondo de reposición hecha en 4 de abril de 1950 fué hecha en tiempo, habiendo transcurrido sólo poco más de tres meses entre una y otra fecha. Descansa la interventora en las disposiciones de la Ley núm. 303 de 12 de abril de 1946, Leyes de Puerto Rico—1946, pág. 783, que en su artículo 12, según fué enmendado por la Ley núm. 189 de 13 de mayo de 1948, Leyes de Puerto Rico—1948, pág. 527, dice ". . . . ningún tribunal aprobará la división o distribución de los bienes de ningún fallecido a menos de haberse presentado y exhiban el recibo o los recibos especiales según lo dispuesto en el artículo 11 de esta Ley . . .", o sea, los recibos que acreditan que se ha hecho el pago de la contribución sobre herencias. No es necesario que resolvamos aquí ahora la validez de esa contención de la interventora, o sea, si podía el Tribunal de Expropiaciones negarse a entregar la suma depositada hasta que se le mostraran los recibos mencionados. Nos basta con señalar que no se ha hecho aquí sugestión alguna de que al así actuar, la interventora no lo hiciera de buena fe. *August Buckhardt*, 32 B.T.A. 1272, 1275; *The*

---

o expropiación forzosa, o del peligro inminente de ello) fuere compulsoria o involuntariamente convertida en propiedad similar o relacionada en servicio o en uso con la propiedad de ese modo convertida, o en dinero efectivo *que se gastare inmediatamente* y de buena fe, de acuerdo con el reglamento prescrito por el Tesorero, en la adquisición de otra propiedad similar o relacionada en servicio o uso con la propiedad así convertida, o en la adquisición del dominio de una corporación dueña de esa otra propiedad, *o en el establecimiento de un fondo de reposición,* no se reconocerá ganancia o pérdida alguna. Si parte del dinero no fuere de ese modo invertida, la ganancia, si la hubiere, será reconocida; pero en cantidad que no excederá del dinero que no se invirtiere de ese modo." (Bastardillas nuestras.)

*Henderson Overland Co.*, 4 B.T.A. 1088, 1092. Es también significativo el hecho de que en casos de expropiación forzosa, la fecha que se ha tomado en consideración para determinar si el contribuyente ha hecho la conversión "inmediatamente" ha sido la fecha en que éste ha *recibido* la compensación. *August Buckhardt*, supra; *The Henderson Overland Co.*, supra; *Paul Haberland*, 25 B.T.A. 1370. Véase también *United States* v. *Certain Lands in Borough of Brooklyn*, 129 F.2d 577. Por lo tanto, resolvemos, que la fecha que debemos considerar en el caso de autos para determinar si la contribuyente actuó "inmediatamente" como lo exige el estatuto, lo es la del 30 de diciembre de 1949.(⁷)

Desde esa fecha—30 de diciembre de 1949—hasta el 4 de abril de 1950 en que la contribuyente solicitó el permiso para el establecimiento del fondo de reposición, habían transcurrido tres meses con varios días. ¿Es tan largo ese período como para determinar que la petición no se hizo inmediatamente? La ley, en su versión inglesa—que es la original—y a la cual debemos ceñirnos por razones de hermenéutica legal, artículo 13 del Código Civil (ed. 1930) ; *Pérez* v. *Tribunal de Distrito*, 69 D.P.R. 4 ; usa la palabra *"forthwith"* cuyo significado es más amplio que el de la palabra "inmediatamente" usada en la traducción al español de la ley y en el reglamento del Tesorero. *August Buckhardt*, supra; *Chickasha Cotton Oil Co.*, 18 B.T.A. 1144; *Paul Haberland*, supra; *Dickerman* v. *Northern Trust Co.*, 176 U.S. 181. El significado de dicho término, en un caso particular, depende de las circunstancias que lo rodean, y una aparente dilación puede ser explicada satisfactoriamente. *The Henderson Overland Co.*, supra; *The Davis Co.*, 6 B.T.A. 281; *Paul Haberland*, supra; *August Buckhardt*, supra. En el caso que nos ocupa, la contribuyente no ha dado explicación alguna

---

(⁷) No se desprende de los autos que para esta fecha la Sucesión Fernández García hubiera *recibido* la compensación fijada por el Tribunal de Expropiaciones. Asumimos, sin embargo, que para dicha fecha y conforme al propio criterio de la Administradora Judicial, la Sucesión podía disponer libremente de la ameritada compensación.

ni ha señalado las razones por las cuales dejó pasar tres meses y varios días antes de solicitar el permiso para el establecimiento del mencionado fondo. Sin embargo, debe tenerse en cuenta que la disposición que examinamos es una que concede un alivio (*relief*) al contribuyente, *August Buckhardt*, supra; *Washington Market Co.*, 25 B.T.A. 576; *Paul Haberland*, supra; *International Boiler Works Co.*, 3 B.T.A. 283; y como tal debemos interpretarla liberalmente para lograr sus propósitos. *Bonwit Teller & Co.* v. *United States*, 283 U.S. 258. Resolvemos, pues, que la contribuyente, en este caso, actuó con razonable diligencia, *August Buckhardt*, supra, y que, dentro de las circunstancias, su aparente dilación no fué irrazonable.

El quinto error fué cometido. La sentencia recurrida deja sin efecto la determinación de deficiencia para el año 1946, notificada a la contribuyente en 9 de marzo de 1951. Por su resolución interlocutoria de 11 de septiembre de 1951, el tribunal a quo, había suspendido los efectos de dicha notificación de deficiencia. En ninguna de estas dos ocasiones se exigió a la contribuyente el afianzamiento de la contribución en controversia, incluyendo intereses y penalidades.

En primer lugar, en este caso no se litiga la determinación de deficiencia notificada a la contribuyente, no empece el hecho de que dicha deficiencia surgiera como resultado de la orden del Tesorero denegando el establecimiento del fondo de reposición. Para litigar dicha deficiencia la contribuyente venía obligada a seguir el procedimiento señalado en la Ley núm. 235 de 1949, y a dar cumplimiento a los requisitos exigidos por dicha ley, pero no lo hizo así.

En segundo lugar la apelación interpuesta contra la orden administrativa del Tesorero denegando el establecimiento del fondo de reposición, no impedía a dicho funcionario, hacer y notificar la determinación de deficiencia correspondiente ni

proseguir el procedimiento administrativo hasta lograr el cobro de la contribución. El artículo 3 de la ley que crea el Tribunal de Contribuciones—Ley núm. 328 de mayo 13 de 1949—(⁸) dispone que en todas las acciones, recursos o procedimientos que deban sustanciarse ante el Tribunal de Contribuciones, la radicación de la demanda no afectará ni menoscabará el derecho del Tesorero de Puerto Rico a hacer efectiva la contribución por los procedimientos autorizados por ley, a menos que el Tribunal de Contribuciones, a solicitud del contribuyente y con citación del Tesorero de Puerto Rico, suspenda el cobro de la contribución en litigio, mediante el afianzamiento, a su entera satisfacción, de la contribución en controversia, incluyendo intereses y penalidades.

El tribunal a quo, por tanto, carecía de facultad para dejar sin efecto la notificación de deficiencia, en la forma que lo hizo. (⁹)

---

(⁸) El primer *disponiéndose* de dicho artículo dispone:

*"Disponiéndose, sin embargo,* que la radicación de la demanda ante el Tribunal de Contribuciones no afectará ni menoscabará el derecho del Tesorero de Puerto Rico a hacer efectiva la contribución por los procedimientos autorizados por ley, a menos que el Tribunal de Contribuciones, a solicitud del contribuyente y con citación del Tesorero de Puerto Rico, suspenda el cobro de la contribución en litigio, mediante el afianzamiento, a su entera satisfacción, de la contribución en controversia, incluyendo intereses y penalidades. La autorización para prestar esta fianza, así como la fijación de su cuantía, serán facultad discrecional y exclusiva del Tribunal, teniendo en cuenta, en cada caso, los hechos y circunstancias que a su juicio concurran y afecten el interés, tanto del contribuyente, como de El Pueblo de Puerto Rico."

(⁹) Aun cuando hemos resuelto que la notificación de deficiencia permanezca intacta en este caso, estamos conscientes del hecho de que a ningún fin práctico conduciría el cobro de la misma, ya que la contribuyente podría, desde luego, radicar inmediatamente una reclamación de reintegro fundado en la conclusión a que aquí llegamos. Empero, deseamos hacer claro que en un caso ordinario la revisión judicial de una orden administrativa dictada antes de la notificación de deficiencia no puede utilizarse para impedir al Tesorero que siga adelante con la notificación de deficiencia. Resolver lo contrario permitiría a los contribuyentes en algunos casos eludir las garantías para el cobro de rentas públicas que, en relación con deficiencias, se encuentran en la Ley de Contribuciones sobre Ingresos.

*La sentencia recurrida debe ser confirmada en aquella*
*parte que ordena al Tesorero permita a la peticionaria esta-*
*blecer el fondo de reposición y revocada en cuanto al pronun-*
*ciamiento dejando sin efecto la determinación de deficiencia.*

---

OPINIÓN CONCURRENTE, y disidente en parte, del JUEZ ASO-
CIADO SEÑOR NEGRÓN FERNÁNDEZ.

Creo que la sentencia recurrida debe ser confirmada en
su totalidad. Una vez que llegamos a la conclusión de que el
Tesorero no estuvo justificado en negarse a permitir el esta-
blecimiento del fondo de reposición, desaparece la base que
tuvo dicho funcionario para determinar que hubo *ganancia*,
y por consiguiente, para la imposición de la contribución, por
vía de deficiencia, resultante de tal ganancia. En tal situa-
ción, a mi juicio, no fué error del tribunal recurrido, al fallar
el caso, dejar sin efecto la determinación de deficiencia del
Tesorero.

Aun cuando "en este caso no se litiga la determinación de
deficiencia notificada a la contribuyente", se reclamaba por
ésta, sin embargo, el derecho al establecimiento de un fondo
de reposición. Reconocido ese derecho, el pronunciamiento
dejando sin efecto la determinación de la deficiencia que con
su propia negativa a permitir el establecimiento de dicho
fondo produjo el Tesorero, es secuela necesaria de la adjudi-
cación final en la controversia principal, que es definitiva, es
la ley entre las partes y no puede ser relitigada. La pecu-
liaridad de este caso consiste en que la adjudicación sobre la
existencia del derecho de la contribuyente al establecimiento
del fondo de reposición excluye la existencia de la autoridad
del Tesorero para imponer la contribución, ya que la *ganancia*
sobre la cual podría imponerse, no existe.

Por lo dicho, confirmaría en su totalidad la sentencia
recurrida.