CELESTINO IRIARTE MIRÓ, demandante y recurrente *v.* SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y recurrido.

*Número*: 12095.  *Resuelto*: 18 de diciembre de 1961.

*F. Fernández Cuyar* y *Manuel I. Vallecillo,* abogados del recu-
rrente; *J. B. Fernández Badillo,* Secretario de Justicia, *J. C.
Santiago Matos, Procurador Auxiliar,* abogados del recurrido.
Sala integrada por el Juez Asociado señor Pérez Pimentel como
Presidente de Sala y los Jueces Asociados señores Blanco
Lugo y Rigau.

El Juez Asociado Señor Pérez Pimentel emitió la opinión
del Tribunal.

En 16 de julio de 1953 el Secretario de Hacienda notificó
al demandante-recurrente deficiencias en su contribución
sobre ingresos correspondiente al año 1950, la cual fue tasada
finalmente, después de una vista administrativa, en la suma
de $123,570.57. Recurrió el contribuyente ante el Tribunal
impugnando la actuación del demandado al aumentar su
ingreso para dicho año en varias partidas y al rechazarle
ciertas deducciones. Todas las partidas fueron transigidas
durante la tramitación del caso con excepción de una que
consistía en un aumento en el ingreso neto del demandante
en la suma de $139,879.34 que de acuerdo con lo alegado por
el demandado representaba la ganancia capital del deman-
dante en la venta involuntaria, por expropiación de su con-
dominio en cierta propiedad.

En relación con esta partida el punto principal que se
discutía era si la misma tributaba en su totalidad según sos-
tenía el demandado, o si solamente tributaba el 25% de la
misma, según alegaba el demandante.

Los hechos que dieron origen a esta controversia, breve-
mente expuestos, son los siguientes:

El demandante y un hermano suyo eran dueños en común
proindiviso de una finca de 302.70 cuerdas ubicada en
Pueblo Viejo de Guaynabo, Puerto Rico. El 3 de marzo de
1942 el Secretario de la Marina de los Estados Unidos instó
ante la Corte Federal un procedimiento para expropiar
185.48 cuerdas de terreno de la mencionada finca. En la
misma fecha radicó una Declaración de Adquisición y depositó
en Corte la suma de $30,000 como justa compensación por la

propiedad expropiada. En su virtud el título absoluto de dominio de dicha propiedad quedó investido en los Estados Unidos de América. Ley del Congreso de 26 de febrero de 1931, c 307, sección 1, 46 Statutes 1421; 40 USCA, Sec. 258a., pág. 219.

En mayo 7 de 1942, las partes estipularon que a los fines de poder continuar los esfuerzos que venían haciendo para lograr una transacción, sin necesidad de celebrar un juicio sobre la valoración del predio expropiado, se pospondría el juicio hasta que cualesquiera de las partes solicitase su señalamiento. Hasta el año 1948 el demandado continuó haciendo gestiones infructuosas con las autoridades federales para que se dejara sin efecto la expropiación a cambio de permitirle al gobierno federal el uso gratuito de los terrenos por tiempo indefinido.

En 6 de diciembre de 1943 intervino el Gobierno de Puerto Rico en el procedimiento de expropiación reclamando tener título y ser dueño de 50.75 cuerdas de la parcela expropiada. Se permitió la intervención y en 12 de noviembre de 1946 El Pueblo de Puerto Rico y los allí demandados estipularon que El Pueblo de Puerto Rico era dueño de 2,023.485 metros cuadrados de los terrenos expropiados.

El juicio de expropiación se celebró en marzo y agosto de 1949 y en 22 de baril de 1950 la Corte federal resolvió definitivamente el caso sosteniendo la validez de la expropiación y fijando el valor de los terrenos expropiados en $278,220.

En 10 de junio de 1950 se depositó en Corte un cheque a favor de los allí demandados por la cantidad de $283,841.28 por concepto de y en satisfacción de la deficiencia concedida por la Corte, cuya suma incluyó $5,621.29 de intereses.

█ █ El contribuyente llevaba sus libros a base del sistema de contabilidad de cobrado y pagado (*cash basis*). El Secretario de Hacienda determinó que dicho contribuyente había realizado su ganancia capital, en el año 1950, fecha en que se dictó la sentencia final en el caso de expropiación y se

depositó en Corte la suma que sirve de base para determinar la ganancia obtenida en la venta involuntaria de su propiedad. El evento tributable surgió en dicho año y en su consecuencia el Secretario de Hacienda le notificó la deficiencia, no para el año 1942, cuando el Gobierno de los Estados Unidos quedó investido del título absoluto de dominio sobre la propiedad, sino para el año 1950. Sobre este punto no hay controversia. Véase *Buscaglia* v. *Tribunal de Contribuciones*, 65 D.P.R. 354; *Rubert* v. *Tribl de Contribuciones*, 74 D.P.R. 51, 67; *Nitterhouse* v. *United States*, 207 F.2d 618, (*cert. den.*, 98 L. Ed. 1091); *Helvering* v. *Nibley-Minnough Lumber Co.*, 70 F.2d 843, Merten's *Law of Federal Income. Taxation*, Vol. II, Secs. 12.39, 12.40. Tampoco hay discusión en cuanto a que en un caso de expropiación el precio de venta es el fijado por el tribunal y que el ingreso lo realiza el contribuyente cuando la Corte adjudica formalmente el monto de la expropiación, ya que cuando el Gobierno radica su Declaración de Adquisición y deposita su estimado del valor de las tierras tal pago es uno provisional que se hace a cuenta de la compensación que fije la Corte en su sentencia final. *U.S.* v. *Miller*, 317 U.S. 369; *United States* v. *Catlin*, 142 F.2d 781; *Atlantic Coast Line Railroad Company* v. *United States*, 132 F.2d 959. (¹)

Sostiene el Secretario de Hacienda que el problema planteado no es de cuándo se realizó el ingreso. "El problema único que plantea este error imputado—dice el Secretario— es el de si la 'compraventa' efectuada por los demandantes está o no cubierta por las disposiciones de la Ley 150 de 1948. Luego, *si la compraventa tuvo concreción legal antes de diciembre 31 de 1948, [sic] el caso de los demandantes cae*

---

(¹) Hemos dado a nuestras leyes de expropiación un alcance similar en cuanto a la naturaleza provisional de la orden invistiendo al Gobierno con el título absoluto de dominio en virtud de la radicación de una Declaración de Adquisición y toma de posesión y el depósito de la suma estimada como junta compensación por la propiedad expropiada. *Autoridad Sobre Hogares* v. *Corte*, 68 D.P.R. 54; *Pueblo de Puerto Rico* v. *632 Metros Cuadrados*, etc., 74 D.P.R. 961.

*fuera de la égida de la misma ya que ésta se aplica únicamente a compraventas efctuadas después de diciembre 31 de 1948."* [*sic*]

Examinemos las disposiciones legales aplicables al caso.

La Sección 5(a) de la Ley de Contribuciones sobre Ingresos, disponía:

"Sección 5(a). Excepto lo que más adelante se provee en esta sección, la ganancia derivada de la venta u otra disposición de la propiedad, será el excedente de la cantidad realizada en dicha venta o disposición, sobre la base que establece la subdivisión (a) o (b) de la sección 7, y la pérdida será el exceso de dicha base sobre la cantidad realizada.

"(b) . . . .

"(c) . . . .

"(d) . . . .

"(e) . . . ."

La Sección 6(a) de dicha Ley dispone: "En la venta o permuta de propiedad la suma total de la ganancia o pérdida, determinada de acuerdo con la sección 5, será reconocida, exceptuando lo que más adelante se dispone en esta sección."

█ La Ley Núm. 150 aprobada en 10 de mayo de 1948 [Leyes de Puerto Rico de ese año, pág. 347] enmendó la citada Sección 5 de la Ley de Contribuciones sobre Ingresos de 1924. (²) La enmienda consistió en adicionarle ciertas disposiciones bajo un nuevo inciso "f" que dispone:

"(f) En el caso de la venta por un individuo de bienes raíces poseídos por él a título de dueño por más de (1) año, (excluyendo bienes raíces poseídos a título de dueño primordialmente para la venta a clientes en el curso ordinario de su industria o negocio, y bienes raíces usados en su industria o negocio), sujetos a la concesión por depreciación que provee la Sección 16(a) (8) sólo el 25 por ciento del excedente de la cantidad realizada en dicha venta sobre la base que establecen las subdivisiones (a) o (b) de la sección 7 será tomado en consideración al computar el ingreso neto de dicho individuo."

---

(²) Las disposiciones de esta Ley conceden un alivio al contribuyente. Debemos interpretarlas liberalmente. *Descartes, Tes.* v. *Tribl. Contribuciones y Cerra, Int.,* 74 D.P.R. 567.

El artículo 3 de dicha Ley Núm. 150 dispuso su vigencia inmediata pero que las disposiciones adicionadas mediante el nuevo inciso "f" serían solamente aplicables a las ventas comprendidas en dicho inciso hechas durante los años contributivos que empezarán con posterioridad al 31 de diciembre de 1947. ([3])

El Tribunal Superior resolvió que las disposiciones de la Ley de Contribuciones sobre Ingresos de 1924 relativas a la realización de ganancia o pérdida en la venta u otra *disposición* de bienes capitales se aplican igualmente a una venta involuntaria como lo es el caso de una expropiación forzosa y que leído e interpretado el inciso (*f*) a la luz de toda la sección 5, de la cual vino a ser parte, y de la sección 7, procede concluir, que la *disposición* de la propiedad a que se refieren dichas secciones se *efectuó*, como cuestión de hecho y de derecho tan pronto Estados Unidos adquirió en 1942 un título de dominio pleno sobre la finca, libre de toda carga, gravamen o reclamación adversa.

No está desprovista de base racional la determinación hecha por el tribunal sentenciador sobre este punto ya que la ley es susceptible de la interpretación que le dió.

La dificultad en determinar si la disposición involuntaria de la propiedad del recurrente está o no cubierta por la Ley Núm. 150, surge de la falta de claridad en la expresión del concepto del acto jurídico que quiso excluir de sus disposiciones. Dice la Ley que las disposiciones que se le adicionan a la sección 5 de la Ley de Contribuciones sobre Ingresos de 1924, mediante el inciso (f), serán solamente aplicables a las *ventas* comprendidas en dicho inciso *hechas* durante los años contributivos que empiecen con posterio-

---

[3] El artículo 3 de la Ley Núm. 150 de 10 de mayo de 1948, reza así: "Artículo 3.—Esta Ley, por ser de carácter urgente y necesaria empezará a regir inmediatamente después de su aprobación, pero las disposiciones que por la presente se adicionan a la Sección 5 de la Ley de Contribuciones sobre Ingresos de 1924 serán solamente aplicables a las ventas comprendidas en dicho inciso, hechas durante los años contributivos que empiecen con posterioridad al 31 de diciembre de 1947."

ridad al 31 de diciembre de 1947. ¿Qué quiere decir *ventas hechas?* Si se tratara de una venta voluntaria quizás podríamos acudir a las disposiciones del Código Civil referentes al contrato de compraventa, el que según algunos tratadistas es el prototipo de las obligaciones contractuales, para buscar el significado del concepto *ventas hechas* usado en la Ley; pero tratándose de una trasmisión de propiedad sobre inmuebles por expropiación forzosa, no cabe asimilar a ésta los principios del Derecho Civil que regulan el contrato de compraventa. (⁴) Por otro lado, no hay duda, según expresa el tribunal a quo, que en este caso hubo una disposición de bienes inmuebles al efectuarse la expropiación. De todos modos tal disposición de la propiedad en virtud de expropiación forzosa a lo más que se asemeja es a la compraventa. (⁵) El Gobierno recibe el derecho de propiedad sobre la cosa mediante el pago de su precio (fijado por la Corte) al dueño; pero fuera de esa característica, difícil sino imposible, resultaría encontrar otras características que sean comunes a la expropiación y a la compraventa. Creemos, sin embargo, que la disposición definitiva de la propiedad ocurre cuando se dicta la sentencia final en el caso de expropiación. Aparte de que el Gobierno puede no hacer uso del remedio provisional de tomar inmediatamente la propiedad tan pronto como inicia el procedimiento de expropiación, mediante la radicación de la Declaración de Adquisición y Toma de Posesión y el depósito en corte del valor estimado de los bienes, no queda obligado a seguir el procedimiento ni a adquirir la propiedad por el hecho de haber comenzado el procedimiento. Aun la orden que dicta la corte, invistiendo al Gobierno con el título sobre la propie-

---

(⁴) Para algunos tratadistas la expropiación no es un negocio jurídico ni por tanto, compraventa forzosa—si fuera compraventa, existiría una obligación de concluir un contrato de esta índole—ni tampoco una trasmisión forzosa, sino más bien un acto de derecho público que tiene como consecuencia de derecho privado, el traspaso de propiedad. III 1ro., Enneccerus-Kipp-Wolff, Tratado de Derecho Civil, pág. 365.

(⁵) Véase *Kneipp* v. *United States*, 184 F.2d 263.

dad, al radicarse la Declaración de Adquisición, no es de carácter final pues el título así adquirido está sujeto a ser derrotado cuando, en un caso como el presente, se ha atacado la facultad del Gobierno para expropiar, poniéndose así en controversia la validez de la expropiación. El título no queda indefectiblemente adquirido por el Gobierno porque adopte el procedimiento auxiliar. Es necesaria a tal fin la sentencia final en el procedimiento, o sea, en el pleito de expropiación. *Catlin* v. *United States*, 324 U.S. 229, 89 L. Ed. 911. En su consecuencia debemos concluir que en este caso ocurrió la disposición de la propiedad cuando la Corte de Distrito de los Estados Unidos para Puerto Rico dictó sentencia final en el pleito de expropiación fijando el precio del inmueble expropiado y resolviendo sobre la validez de la expropiación. Habiéndose dictado sentencia y consignada la justa compensación fijada por la Corte en el año 1950, la disposición o venta, mediante expropiación, de la finca del recurrente, debe considerarse hecha en dicho año 1950 y la ganancia obtenida en la misma tributará en la medida establecida en la Sección 5 de la Ley de Contribuciones sobre Ingresos de 1924, según fue enmendada por la Ley Núm. 150 de 1948.

Se plantea en el segundo señalamiento de error si el costo o valor de las mejoras hechas a los terrenos expropiados por el Gobierno de los Estados Unidos antes de adquirir título y mientras los poseía en virtud del derecho de uso concedídole por el recurrente, debe o no sumarse al costo de los terrenos para establecer la base sobre la cual ha de determinarse la ganancia capital.

Surge de los autos que en 30 de septiembre de 1941 el recurrente mediante convenio autorizó al Gobierno de los Estados Unidos a rellenar los terrenos bajos de su finca y, a cambio de los beneficios que ello representaba, cedió a los Estados Unidos el derecho de paso por la finca. Subsistente ese acuerdo los Estados Unidos rellenaron 40-½ cuerdas de

aquellos terrenos a un costo de $230,000 y además construyó una carretera, todo ello por cuenta del cesionario. Tanto los terrenos mejorados como la carretera quedaron comprendidos en los terrenos objeto de expropiación.

El principio general por el cual se requiere que se determine la base sobre la cual ha de computarse el ingreso obtenido en la disposición de propiedad, es el de tributar la ganancia habida una sola vez. Mertens, *Law of Federal Income Taxation*, Vol. 3A., Sección 21.01. La regla general es que la base será el costo de adquisición con ajustes adecuados por concepto de inversión de capital adicional, reembolso o su equivalente y otras partidas. Se ha resuelto que el costo de las mejoras hechas por un arrendatario no puede incluirse como parte de la base a manera de una inversión o un gasto atribuíble a la cuenta de capital excepto en tanto en cuanto el valor de dichas mejoras haya sido declarado como parte de los ingresos del arrendador. Wm. Merrian Crane, 27 D.T.A., 360 confirmado en 68 F.2d 460. Tales partidas solamente pasan a ser parte del capital del contribuyente cuando por primera vez se convierte en ingreso de ésta. Mertens, *obra citada*, sección 21.221. El recurrente en este caso no alegó ni probó que el costo de las indicadas mejoras hubiera sido previamente incluido o informado para propósito de tributación como parte de sus ingresos. El caso de *Comm.* v. *Laguna Land & Water Co.*, 118 F.2d 112, citado por el apelante no ofrece apoyo a su contención. Concluimos en su consecuencia que el segundo error no fue cometido.

*Se modificará la sentencia dictada por el Tribunal Superior de conformidad con esta opinión y así modificada será confirmada y devuelto el caso para ulteriores procedimientos.*