*1185 TEXTO COMPLETO DE LA RESOLUCION
El Administrador de la Corporación del Fondo del Seguro del Estado, apela de sentencia emitida en su contra, que archivó el caso del epígrafe por no haberse efectuado trámite alguno en el mismo durante los últimos seis meses. De tal determinación de Instancia oportunamente el apelante solicitó reconsideración, la cual se declaró "no ha lugar". Posteriormente solicitó moción de relevo de sentencia, la cual también fue denegada.
Hechos
Myrta Fonseca Aulet trabajaba como maestra para Modern Hair Styling Institute cuando sufrió un accidente al caer en las escaleras del edificio donde ubicaba el referido instituto. Como resultado del suceso desarrolló una "depresión mayor" que se alega la dejó total y permanentemente incapacitada. El Administrador del Fondo del Seguro del Estado (en adelante F.S.E). sufragó los gastos de tratamiento y compensación por un monto de $61,857.50. En enero de 1994 el Administrador F.S.E. presentó demanda en subrogación de erogaciones y en representación y reclamo en daños y perjuicios de la obrero lesionada Myrta Fonseca Aulet por la suma de $100,000, en contra de Antonio Lanzar, imputándole negligencia al no dar mantenimiento adecuado al edificio de su propiedad donde ocurrió el accidente. También accionó contra la Compañía de Seguros San Miguel, que alegadamente había expedido una póliza de seguro con cubierta por accidentes en el uso legítimo de las facilidades del edificio, y de igual forma accionó contra John Doe y Richard Roe y la Compañía de Seguros X, Y, yZ.
Debido a la alegada condición de salud de la obrero lesionada, se le hizo difícil al abogado del F.S.E. comunicarse con ésta para atender los asuntos relacionados con la parte de la demanda que corresponde a la reclamación de la obrera. El 7 de agosto de 1996, en la segunda vista sobre el estado de los procedimientos, el abogado del F.S.E. —Ledo. Peter Serrano Ortiz— no pudo comparecer por razón de enfermedad y el Ledo. Colón Olivo acudió en sustitución y manifestó al tribunal respecto a la negativa de la obrera lesionada pará cooperar con el caso y en tal ocasión solicitó eximiera al F.S.E. de la representación legal de la obrera. No obstante, los abogados del F.S.E. seguirían en representación de dicha corporación pública respecto la parte del litigio que corresponde al recobro de dinero referente a las erogaciones habidas en la cura, tratamiento y compensación, por un total de $61,857.50. El tribunal concedió 30 días a la representación legal del F.S.E. para que presentase la moción de renuncia de representación legal a tal efecto. Además, dejó pendiente todo señalamiento hasta que compareciera la nueva representación legal de la co-demandante. Sin embargo, la representación legal del F.S.E. nunca presentó la moción de renuncia de representación legal y continuó en autos con la representación dual, del F.S.E. y la obrera.
El 8 de abril de 1997, ante la inacción de la parte demandante, el tribunal dictó sentencia desestimando y archivando en su totalidad el caso, que fue notificado el 14 de abril de 1997. Conforme a la sentencia, no se había efectuado trámite alguno durante los últimos seis meses y la parte demandante no había comparecido a exponer razón, si alguna, para no proceder al archivo del pleito.
El 29 de abril de 1997, el apelante presentó moción de reconsideración que no fue acogida dentro de los diez días y luego fue declarada no ha lugar el 16 de mayo de 1997, cuando ya la sentencia había *1186 advenido final y firme. El 6 de junio de 1997, el Administrador del F.S.E. presentó moción solicitando el relevo de la sentencia, señalando que su inacción se debía a la enfermedad de su representante legal y de la pobre colaboración por parte de la obrera co-demandante, Sra. Myrta Fonseca Aulet.. El Tribunal de Primera Instancia, mediante resolución de 26 de junio de 1997 notificada el 2 de julio de 1997, declaró "no ha lugar" la moción de relevo de sentencia. Inconforme, el 29 de julio de 1997 el F.S.E. presentó ante el Tribunal de Circuito de Apelaciones la causa del epígrafe. El abogado del F.S.E. informa que no pudo someter la moción de renuncia de representación legal anunciada el 7 de agosto de 1996, porque estuvo fuera de su trabajo de tres a cuatro meses debido a una condición de glaucoma en el ojo izquierdo. Alega además, que no se le notificó previamente la orden de mostrar causa o concedió un término explicativo, según requerido por la Regla 39.2 de Procedimiento Civil, 1979.
Elba Lanzar compareció en los autos del epígrafe mediante "Oposición a Apelación y Solicitud de Desestimación del Recurso" en el que: 1) respecto a la paralización de acciones judiciales decretada en la causa Núm. KAC-97-0946 (Juan Antonio García v. El Fénix de Puerto Rico) nos señala que dictaminada el 16 de septiembre de 1997 los 6 meses del Art. 40 del Código de Seguros (26 L.P.R.A. 4001), no han vencido, por lo que carecemos de "jurisdicción" para entender en este asunto dondevEl-Fénix de Puerto Rico es asegurador de la sucesión del Sr. Antonio Lanzar y 2) el dictamen de instancia, archivando la causa, debe sostenerse debido a que la misma ha sido presentada en forma festinada y solamente se emplazó a Elba Lanzar que sólo es un miembro de la sucesión de Antonio Lanzar.
Exposición y Análisis
Transcurrido ya el término reglamentario nada debemos exponer respecto al primer asunto. En cuanto al segundo, basta señalar que se ha demandado a Antonio Lanzar y no a su sucesión y que ante Instancia compareció su aseguradora. Es conocida la doctrina respecto a que la sucesión carece de personalidad jurídica y que hay que accesar a ella por vía de sus miembros, Danz v. Suau, 82 D.P.R. 609 (1961); Descartes v. Tribunal, 74 D.P.R. 567 (1953); Sucn. Belaval v. Acosta, 64 D.P.R. 109 (1944), pero ese asunto no está ahora ante nuestra consideración. Además, como se sabe, la acción contra la aseguradora es una sustantiva totalmente independiente de la que se esgrime contra el asegurado, conforme lo dispone el Art. 20.030 del Código de Seguros de Puerto Rico, 26 L.P.R.A. 2003; Cortés Román v. E.L.A., 106 D.P.R. 504 (1977).
Es preciso primero resolver'que el presente caso trata de un certiorari y no de una apelación. Es norma reiterada que el recurso apropiado para revisar una resolución que deniega una solicitud de relevo de sentencia al amparo de la Regla 49.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 49.2, es el de certiorari. Ortalaza v. F.S.E., 116 D.P.R. 700 (1985).
El 24 de septiembre de 1997 concedimos a la parte "apelada", en verdad promovida por el recurso de certiorari, 60 días para mostrar causa por la cual no debíamos expedir para dejar sin efecto la sentencia de archivo y permitir que el trámite de la causa continúe en forma expedita. El 22 de diciembre de 1997 el término fue extendido hasta el 26 de enero de 1998.
Atendemos el asunto en sus méritos, respecto a si debió el tribunal de instancia ordenar la reapertura del caso, tras la moción de relevo de sentencia.
El Tribunal Supremo ha resuelto que a tal efecto se debe hacer un análisis y balance racional y justiciero de todo el expediente, para determinar si bajo las circunstancias específicas del caso hubo error, inadvertencia, sorpresa o negligencia excusable, o por alguna otra razón de peso no sería equitativo que prevaleciera la sentencia de archivo. Dávila v. Hosp. San Miguel Inc., 117 D.P.R. 807 (1986).
Aunque la demanda del epígrafe está presentada desde el 1994 y en agosto del 1996 durante la segunda vista sobre el estado litigioso, el F.S.E. solicitó y obtuvo término para solicitar el relevo de la ^j^esentación legal de la co-demandante Myrta Fonseca, lo cierto es que nunca ello se efectuó, quedando la representación de ambos co-demandantes en el mismo abogado, cuando éste enfermó (glaucoma del ojo izquierdo) lo que por un tiempo descarriló la atención de la causa. De ordinario, *1187 cuando un quebranto de salud impide a un abogado continuar en la adecuada atención de un asunto judicial, otro abogado habrá de sustituirle, máxime cuando se trata de toda una división legal en el F.S.E. No obstante, no es del todo excusable la falta de efectiva atención del litigio por parte del F.S.E., entendemos que medió una situación extrema que nos inclina a conceder a la paite demandante una oportunidad para la consecución de su causa, conforme lo autoriza la norma de Maldonado v. Srio. de Rec. Naturales, 113 D.P.R. 474 (1982). Como se sabe, la privación del día en corte a un litigante sólo procede en casos extremos y circunstancias aquí ausentes. Banco v. Carlo, 131 D.P.R. _ (1992), 92 J.T.S. 76. A la dificultad de la enfermedad del abogado a cargo de la causa dual (del F.S.E. en subrrogación y en beneficio del obrero) hay que sumar la preexistente condición incapacitante de la demandante Fonseca Aulet, que alegadamente se imputa al accidente, lo que incidió en que otros abogados de la misma división legal del F.S.E. no asumieran la representación en sustitución. Por otro lado, de los autos originales no surge que el foro de Instancia hubiere dado a las partes el aviso de 10 días que requiere la Regla 39.2(b) de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III, previo a un dictamen de archivo, por inacción. El caso de autos no presenta, pues, la situación de clara y crasa falta de diligencia, imputable también a la co-demandante Fonseca Aulet que requiera de la drástica sanción que supone privar a una parte de su día en corte. Véase Dávila Mundo v. Hospital San Miguel, 117 D.P.R. 807 (1986); Echevarría v. Sucn. Pérez, 123 D.P.R. 664 (1989) y Rosario Rodríguez v. E.L.A., 122 D.P.R. 554 (1988).
Dictamen
Conforme a lo expuesto se deja sin efecto la sentencia de archivo dictada el 8 de abril de 1997 en la causa del epígrafe y una vez la presente advenga final y firme se remitirá el mandato al foro de Instancia para continuación del trámite.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida I. Oquendo Graulau
Secretaria General
ESCOLIOS 98 DTA 110
1. No obstante, en el epígrafe y varios documentos de este trámite surge el apellido como Lagar/Entendemos que se trata de un lapsus tipográfico.
2. Surge también de autos que dicha co-demandante ha necesitado. del nombramiento de un "tutor administrativo"p or parte de la Comisión Industrial (Sr. Ramos Aulet, nombrado el 26 de octubre de 1993) y ante el foro de Instancia se comenzó el trámite para nombrarle un tutor judicial, expediente que no concluyó por falta de trámite.