Autoridad Sobre Hogares de Puerto Rico, peticionaria, *v.* Corte de Distrito de Arecibo, Hon. R. Agraít Aldea, Juez, demandada. La Misma, demandante y apelante, *v.* Carmelo J., Rafael y Amado Colón, Ramón Mathos Goitía, John Doe y El Pueblo de Puerto Rico, representado por el Tesorero de Puerto Rico, demandados y apelados.

Núms. 1718 y 9584.—*Sometidos:* Diciembre 3, 1947. *Resueltos:* Enero 23, 1948.

*R. B. Pérez Mercado*, abogado de la peticionaria, a su vez apelante; *Francisco M. Susoni, Jr.*, y *Arturo Ortiz Toro*, abogados de los interventores, demandados en el pleito principal, a su vez apelados.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

En octubre 17 de 1944 la Autoridad Sobre Hogares de Puerto Rico inició ante la Corte de Distrito de Arecibo una acción sobre expropiación forzosa contra Carmelo J. Colón

y otros. A petición de la Autoridad demandante, en octubre 20 de 1944 la corte inferior dictó una resolución declarando que el título de dominio sobre la propiedad que se trataba de expropiar había quedado investido en la Autoridad demandante desde el momento—18 de octubre de 1944—en que ésta radicó la declaración de adquisición y depositó en Secretaría la suma de $14,828.25; que los demandados tenían derecho a una justa compensación, la cual sería determinada en el mismo procedimiento; y que la Autoridad tenía derecho a la posesión y uso de la finca, debiendo los demandados entregar la propiedad inmediatamente a la demandante.

En marzo 20 de 1947 los demandados radicaron una "Moción Solicitando la Reversión del Título y Posesión de la Propiedad," alegando como fundamentos de la misma que la orden final en el procedimiento de expropiación fué dictada el 8 de noviembre de 1945; que a la fecha en que se radicó la moción la Autoridad demandante no había hecho uso de la propiedad expropiada, ni los demandados tampoco habían hecho uso del dinero depositado, el cual estaba aún en la Secretaría del Tribunal; que de acuerdo con la sección 7 de la Ley de Expropiación Forzosa, según quedó enmendada por la ley de 12 de marzo de 1908,(¹) si el solicitante no hace uso de la propiedad expropiada dentro del término señalado en la concesión o franquicia o dentro del plazo de seis meses en caso de que no se señale tiempo alguno, a contar de la fecha en que se dictó la resolución final —8 de noviembre de 1945—la parte desposeída o expropiada puede recuperar la propiedad devolviendo la cantidad reci-

(¹) *Sección 7.—Término para llevar las obras a cabo.*—En todos los casos de expropiación forzosa, o de venta, cesión o gravamen voluntario de la propiedad, hecha por el dueño para la realización de una obra de utilidad pública, si no se llevare a cabo dicha obra dentro del término señalado en la concesión o franquicia, o en caso de que en ella no se señalare tiempo alguno, dentro del plazo de seis meses, a contar desde la fecha en que se dicte la sentencia ordenando la expropiación, la parte expropiada o que voluntariamente vendió, cedió o gravó, su dominio, tendrá derecho de acción para recuperar la propiedad expropiada devolviendo el importe recibido.

bida. Solicitaron los demandados que se ordenara la devolución de la propiedad a los expropiados y que el dinero depositado fuese devuelto a la Autoridad demandante. Se opuso la demandante, alegando que la Autoridad es una rama del Gobierno; que las disposiciones de la citada sección 7 se refieren a expropiaciones cuando se ha otorgado una concesión o franquicia a una compañía de servicio público; que la Ley no ha pretendido imponer restricciones al soberano o a sus agencias; que la limitación de tiempo que establece la sección 7 es solamente aplicable a las compañías de servicio público, para obligarlas a realizar el acto de utilidad pública dentro de un tiempo razonable; y, por último, que de acuerdo con el segundo párrafo del apartado ''H'' del artículo 8 de la Ley núm. 126 de mayo 6 de 1938(²) que crea la Autoridad de Hogares de Puerto Rico, ninguna disposición de ley respecto a la adquisición, administración o enajenación de bienes por otras entidades públicas se aplicará. a ninguna Autoridad a menos que por una ley se disponga así específicamente. En junio 4 de 1947 la corte inferior dictó su resolución ordenando a la Autoridad que restituyese a los demandados el título y la posesión de la finca y reconociendo a la Autoridad el derecho a retirar la suma depositada en la Secretaría.

Solicitó la Autoridad la reconsideración de la resolución, alegando como razones adicionales: (a) que la resolución sobre investidura del título, dictada en octubre 20 de 1944 es una resolución interlocutoria y no una sentencia definitiva que habrá de poner término al litigio, y por tanto no existe base para contar el término a los efectos del supuesto derecho de reversión reconocido por la corte; (b) que la posesión que se dió a la demandante fué puramente simbólica, porque como cuestión de hecho la demandante nunca

---

(²)''Ninguna disposición de ley respecto a la adquisición, administración o enajenación de bienes por otras entidades públicas se aplicará a ninguna autoridad a menos que la Asamblea Legislativa lo disponga así de un modo específico.''

tomó posesión de los bienes expropiados y los demandados continuaron en posesión, negándose a recibir la suma depositada y a permitir la entrada de los empleados de la Autoridad; y (c) que la Autoridad tiene preparados todos los planos y dispone de los fondos necesarios para el desarrollo del proyecto para el cual se hizo la expropiación.' En su oposición a la reconsideración alegaron los demandados que la Autoridad demandante tomó posesión de hecho y de derecho de la finca expropiada en virtud de la resolución al incidente sobre posesión dictada por la corte inferior el día 16 de febrero de 1945 y que desde esa fecha la demandante ha estado en la posesión real y efectiva del inmueble, penetrando en la finca cuantas veces lo ha deseado, sin oposición de parte de los demandados. Es un hecho admitido y la corte inferior así lo hizo constar en la resolución recurrida, que no obstante haber transcurrido cerca de tres años desde que le fuera transmitido el título, la Autoridad demandante no había realizado obra de clase alguna en la finca expropiada.

Declarada sin lugar la reconsideración, pidió la demandante se dictara sentencia desestimando la demanda, a los efectos de apelar para ante esta Corte Suprema. La Corte inferior dictó una "Sentencia Sobre Restitución de Bienes", por la cual ratificó la resolución de junio 4 de 1947 y ordenó la restitución sin decretar la desestimación de la demanda. Alegando tener dudas en cuanto a si dicha sentencia es apelable, solicitó la demandante una sentencia complementaria declarando sin lugar la demanda. Negóse a ello la corte inferior por entender que sería un contrasentido declarar sin lugar la demanda, por el fundamento de qué la misma había sido declarada con lugar tan pronto se presentó y se dictó la resolución sobre la incautación. En julio 1ro. de 1947 la Autoridad demandante radicó su escrito de apelación, pero teniendo dudas en cuanto a si la sentencia es

apelable, el 24 del mismo mes radicó una petición de *certio-rari* para la revisión de los procedimientos ante la corte inferior.

Habiendo quedado perfeccionado y sometido el recurso de apelación núm. 9584, interpuesto por la Autoridad demandante, y siendo las cuestiones envueltas en dicho recurso las mismas que se levantan en el de certiorari, procederemos a considerar ambos recursos como si fuera uno solo.

 El primer error que se imputa al tribunal recurrido es el de haber interpretado las disposiciones del artículo 7 de la Ley de Expropiación Forzosa, supra, en el sentido de que las mismas son aplicables a la Autoridad Sobre Hogares de Puerto Rico, que es una agencia o instrumentalidad del Gobierno de Puerto Rico.

Arguye la peticionaria que para que el citado artículo 7 sea aplicable es indispensable que concurran los siguientes elementos: (1) que se haya comprado o expropiado una propiedad privada para una obra de utilidad pública; (*b*) que la obra se lleve a cabo a virtud de una *concesión o franquicia;* y, (*c*) que la obra no se haya realizado dentro del término fijado en la concesión o franquicia, o en caso de que en ella no se hubiere señalado tiempo alguno, *dentro de seis meses desde que se dictara sentencia en el caso de expropiación;* y que siendo las compañías de servicio público las únicas entidades que actúan a base de concesiones o franquicias, es a ellas a las que puede aplicarse el precepto de dicho artículo 7 y no a las agencias o instrumentalidades del Gobierno que no actúan a base de una concesión o franquicia.

La primera cuestión que debemos considerar y resolver es si la Autoridad Sobre Hogares de Puerto Rico está o no obligada a cumplir con los preceptos de la Ley de Expropiación Forzosa.

El artículo 2 de la Carta Orgánica dispone en su primer párrafo que "No se pondrá en vigor en Puerto Rico ninguna ley que privare a una persona de la vida, libertad o propiedad sin el debido procedimiento de ley"; y en su pá-

rrafo 9 que "La propiedad particular no será tomada ni perjudicada para uso público, a no ser mediante el pago de una justa compensación fijada en la forma provista por ley."

La Ley de Expropiación Forzosa de 12 de marzo de 1903 dispone en su artículo 1 que "Nadie podrá ser privado de todo o parte de su propiedad, sino de acuerdo con las disposiciones del artículo 355 del Código Civil (Art. 282 Código Civil, Ed. de 1930) y de esta Ley."

El artículo 282 del Código Civil, Ed. de 1930, provee que "Nadie podrá ser privado de su propiedad sino por autoridad competente y *por causa justificada de utilidad pública,* previa siempre la indemnización correspondiente."

"Dominio eminente" es el derecho o la facultad que tiene la nación o el estado, o aquéllos a quienes la facultad ha sido legalmente delegada, para expropiar la propiedad privada para dedicarla a un uso público. Es un atributo inherente y necesario de la soberanía, que existe independientemente de las disposiciones constitucionales y es superior a todos los derechos de propiedad. Es una facultad que reposa en el estado, pero para su ejercicio es necesaria la acción legislativa especificando las ocasiones, la forma y manera en que puede recurrirse a la expropiación y las agencias que pueden hacer uso de ese poder extraordinario. El poder de expropiar la propiedad privada para dedicarla a un uso público puede ser ejercitado por el Gobierno directamente o mediante la creación por la Legislatura de una entidad corporativa, la cual actuará por delegación de dicho poder. Y de más está decir que si el estado puede expropiar solamente cuando la propiedad es necesaria para dedicarla a un uso público, la corporación que actúa por delegación del estado está sujeta a esa misma limitación.

En mayo 6 de 1938, la Legislatura Insular aprobó la Ley núm. 126 (Leyes de 1938, pág. 262) titulada "Ley de Autoridades Sobre Hogares." El artículo 2 de dicha Ley, después de describir las condiciones prevalecientes en la isla

con motivo de la escasez de viviendas seguras e higiénicas para las personas de pocos ingresos, declara, entre otras cosas, lo siguiente:

"(c) que la eliminación, redistribución y reconstrucción de las zonas donde existen viviendas de condiciones antihigiénicas o inseguras y *el facilitar viviendas seguras e higiénicas a las personas de pocos ingresos son fines de utilidad y uso públicos* para los cuales pueden invertirse fondos públicos y *adquirirse propiedades particulares,* . . . . ; (d) *que es de interés público* que se dé comienzo lo más pronto posible a los trabajos en los proyectos para tales fines con el fin de *aliviar el desempleo* que actualmente constituye una emergencia; . . . . ." (Bastardillas nuestras.)

Por el artículo 4 de la misma Ley se creó una entidad pública, corporativa y política, que se denominará "Autoridad Sobre Hogares de Puerto Rico." Por el inciso (a) del artículo 8 la Legislatura confirió a la corporación así creada poder para "demandar y ser demandada," y por el inciso (d) del mismo artículo la autorizó para "adquirir mediante el ejercicio de la facultad de expropiación forzosa bienes inmuebles."

La Ley creadora de la Autoridad Sobre Hogares dispone además lo siguiente:

"*Artículo 12.* Cualquier autoridad tendrá derecho a adquirir *mediante el procedimiento de expropiación forzosa* cualesquier bienes inmuebles que considere necesarios para los fines de esta Ley después que adopte una resolución declarando que la adquisición de los bienes inmuebles que en ella se describen son necesarios para tales fines. *Cualquier autoridad podrá apelar al procedimiento de expropiación forzosa de acuerdo con las disposiciones de la ley titulada 'Ley estableciendo la expropiación forzosa de la propiedad particular para los fines y bajo las condiciones expresadas en la misma,' aprobada en marzo 12 de 1903,* y de las leyes que la enmiendan o suplementan; o podrá apelar al procedimiento de expropiación forzosa según se provea por otras disposiciones estatutarias aplicables para tales expropiaciones. . . . . ." (Bastardillas nuestras.)

La Autoridad demandante es, pues, una corporación pública organizada por el estado para desarrollar un proyecto

de construcción de viviendas seguras e higiénicas para personas de pocos ingresos. Para que la corporación pueda realizar esos "fines de utilidad y uso públicos", la Legislatura la ha investido expresamente con la facultad de adquirir por compra o expropiación los bienes inmuebles que fueren necesarios para el desarrollo de tales proyectos. Empero, la concesión o delegación que del poder de dominio eminente ha hecho la Legislatura a favor de la Autoridad demandante no es de carácter absoluta y sí sujeta a las restricciones y limitaciones que en términos claros y precisos establece el artículo 12, supra. La Autoridad tiene derecho a expropiar los bienes inmuebles que considere necesarios para los fines públicos especificados en la Ley, pero deberá hacerlo "mediante el procedimiento de expropiación forzosa," provisto por la "Ley estableciendo la expropiación forzosa de la propiedad particular, para los fines y bajo las condiciones expresadas en la misma, aprobada en marzo 12 de 1903." Y ya hemos visto que esa Ley dispone en su artículo 7, supra, que el título y la posesión revertirán al expropiado cuando no se llevare a cabo la obra dentro del término señalado en la concesión o dentro del plazo de seis meses "a contar de la fecha en que se dicte la sentencia ordenando la expropiación."

La jurisprudencia citada por la recurrente para sostener su contención de que habiendo pasado a la Autoridad el título de dominio absoluto sobre la propiedad, ésta no revierte a los antiguos dueños al cesar el uso de la misma para los propósitos de la expropiación, no es de aplicación al caso que estamos considerando. Aquí no se reclama la reversión de la propiedad por haber cesado el uso público y sí por no haberse dedicado la propiedad, dentro del término prescrito por la Ley, al uso público para el cual fué expropiada.

Nuestro estatuto, la Ley de Expropiación Forzosa, a la cual debe ajustarse la Autoridad demandante por mandato expreso del artículo 12 de la Ley que le dió existencia legal, no guarda silencio en cuanto al término dentro del cual la

propiedad expropiada debe ser dedicada al uso público. Si ese término es obligatorio, como lo es a nuestro juicio, para el Gobierno de Puerto Rico, necesariamente debe ser obligatorio para cualquier autoridad, agencia o instrumentalidad gubernamental o corporación de servicio público que ejercite la facultad de expropiar por delegación o concesión del gobierno insular. No tenemos duda alguna en cuanto a que esa fué la intención de la Legislatura cuando dispuso, en el artículo 12, supra, que la Autoridad Sobre Hogares "podrá apelar al procedimiento de expropiación forzosa de acuerdo con las disposiciones de la ley titulada 'Ley estableciendo la expropiación forzosa de la propiedad particular, para los fines *y bajo las condiciones* expresadas en la misma.'"

Después de un detenido estudio de las leyes citadas opinamos y así lo resolvemos que la Autoridad Sobre Hogares de Puerto Rico es una corporación pública que al hacer uso de la facultad de expropiar propiedades privadas actúa mediante la concesión o delegación expresa que de esa facultad le ha hecho la legislatura, estando en tal virtud y por mandato expreso del artículo 12 de la Ley de su creación, sujeta a las disposiciones del artículo 7 de la Ley de Expropiación forzosa, supra.

Ya hemos visto que de acuerdo con el artículo 7 de la Ley de Expropiación Forzosa la parte demandada tendrá derecho de acción para recuperar la propiedad expropiada, si la obra de utilidad pública no se llevare a cabo "dentro del término de seis (6) meses *a contar desde la fecha en que se dicte la sentencia ordenando la expropiación.*" Nos toca ahora considerar y resolver si la corte inferior interpretó la ley correctamente o si erró al resolver que la resolución de octubre 20 de 1944, por la cual se transmitió a la Autoridad Sobre Hogares el título de dominio y la posesión de la propiedad expropiada, es la sentencia ordenando la expropiación a que se refiere el artículo 7 de la citada Ley de Expropiación; y que el término de seis meses para la ejecu-

ción de las obras comenzó a correr en la fecha en que se dictó dicha resolución.

De conformidad·con la súplica de la "Declaración Sobre Adquisición y Entrega Material de Propiedad o Declaración de Incautación (Declaration of Taking)", formulada por la Autoridad demandante, la corte inferior dictó la resolución de 20 de octubre de 1944, por la cual decretó: (a) que el título de dominio absoluto sobre la propiedad quedó investido en la Autoridad desde el momento en que se radicó la Declaración de Adquisición y se depositó. la suma de $14,828.25, sujeta a revisión; (b) que "la propiedad queda expropiada y su título queda investido en la Autoridad; (c) que la Autoridad tiene ahora el derecho al dominio, posesión y uso de la finca expropiada; y (d) que la causa quedaría abierta para cualquier orden, sentencia o decreto adicional que pudiere ser necesario en relación con la misma."

La Ley de Expropiación Forzosa es una ley de carácter procesal por la cual se establece el procedimiento que deberá seguirse ante las cortes de justicia para poder privar a una persona de su propiedad privada con el propósito de dedicarla a un uso público. La Ley original aprobada en marzo 12 de 1903 no contenía disposición alguna que permitiese a la parte demandante adquirir e incautarse de la propiedad objeto de la expropiación, en cualquier momento durante la tramitación del pleito, mediante el depósito en la corte de la cantidad estimada como justa compensación. Fué en abril 1 de 1941 que la Legislatura aprobó la Ley núm. 2 (Leyes de 1941(1) pág. 285) por la cual se adicionó a la Ley original la sección 5A, la que dispone que la parte demandante en un procedimiento de expropiación "podrá radicar dentro de la misma causa, al tiempo de radicar la demanda o *en cualquier momento antes de recaer sentencia,* una declaración para la adquisición y entrega material de la propiedad objeto de la expropiación;" que tan pronto se radique la declaración y se haga el depósito de la cantidad estimada como justa compensación, "el título absoluto de dominio de

dicha propiedad, o cualquier derecho o interés menor en la misma según quede especificado en la declaración, quedará investido en el Pueblo de Puerto Rico . . . o en la agencia o instrumentalidad de El Pueblo de Puerto Rico que hubiere requerido la expropiación, . . . y el derecho a justa compensación por la misma quedará investido en la persona o personas a quienes corresponda;'' y que ''dicha compensación deberá determinarse y adjudicarse en dicho procedimiento, *y decretarse por la sentencia que recaiga en el mismo.''* La sección 5B que fué adicionada por la Ley núm. 19 de 1942 (2da. y 3ra. Sesiones Extraordinarias, pág. 83) prescribe que *''en cualquier sentencia* dictada en un procedimiento de expropiación forzosa, . . . en que la cantidad determinada por la corte como justa compensación por la propiedad . . . sea mayor que la cantidad fijada por el demandante o depositada en corte como justa compensación por tal propiedad . . . , El Pueblo de Puerto Rico pagará el importe de la diferencia entre la suma así fijada por el demandante y depositada por él en la corte y la cantidad que a tal efecto haya determinado la corte como justa compensación por la propiedad o derechos en la misma objeto de tal procedimiento, etc.'' Dispone, además, dicha sección que ''tan pronto la sentencia referida en el párrafo anterior sea final e inapelable,'' el Tesorero pagará la diferencia a que se ha hecho referencia, con cargo al Tesoro insular.

El remedio que conceden las secciones 5A y 5B, supra, para la transmisión del dominio y toma de posesión de la propiedad que se trata de expropiar, es un remedio provisional al cual la parte demandante puede recurrir, a su elección, en cualquier momento antes de que se dicte la sentencia que ha de poner fin al procedimiento. La transmisión del título absoluto de dominio y del derecho a tomar posesión del inmueble queda consumada tan pronto se radica la declaración de adquisición y entrega y se hace el depósito en corte de la suma estimada como compensación, sin que para ello sea nece-

saria una orden de la corte a ese efecto. La transmisión se efectúa, por ministerio de la Ley, al radicarse la petición y hacerse el depósito. Empero, la práctica de obtener una orden judicial aprobando la transmisión del dominio se sigue generalmente con el propósito de utilizarla como evidencia de que la Ley ha sido cumplida y a los efectos de la inscripción del título en el Registro de la Propiedad. *Pueblo* v. *Registrador*, 64 D.P.R. 130; *United States* v. *72 acres of land, more or less, situate in Oakland, Alameda County*, D. C. Cal. (1941), 37 F. Supp. 297.

La sentencia definitiva en un procedimiento de expropiación forzosa no puede ser otra que aquélla en la que la corte, después de oír las pruebas aducidas por las partes en cuanto al valor de la propiedad objeto de la expropiación, fija la cantidad que el demandante deberá pagar al demandado como justa compensación por la propiedad de la cual ha sido privado. Pudiendo ser esa justa compensación una cantidad mayor que la depositada por el demandante al radicar su declaración sobre adquisición y toma de posesión de la propiedad y siendo necesario practicar pruebas para poder determinar la cantidad que el demandante estará obligado a pagar, forzoso es concluir que la resolución aprobando la trasmisión del dominio y el derecho a la toma de posesión es una orden interlocutoria y no una sentencia final y definitiva que' pone fin a la controversia entre las partes. Véase: *Catlin* v. *United States*, 324 U. S. 229.

En el caso que estamos considerando la Autoridad demandante radicó su Declaración de Incautación e hizo el depósito de la suma que estimó como justa compensación por la propiedad objeto de la expropiación, pero ni la demandante ni los demandados se ocuparon de dar paso alguno tendiente a conseguir que la corte dictase una sentencia definitiva fijando la cantidad que como justa compensación la demandante debe pagar a los demandados por la propiedad que se trata de expropiar.

No habiéndose dictado aún una sentencia definitiva, el término de seis meses fijado por el artículo 7 de la Ley de Expropiación Forzosa, para la reversión del título a los demandados, no ha empezado a correr. La moción solicitando la reversión del título y la posesión del inmueble fué radicada prematuramente. Erró la corte inferior al declararla con lugar.

*La resolución recurrida dictada en junio 4 de 1947 será anulada, la sentencia recurrida dictada en 27 de junio de 1947 será revocada y el caso devuelto a la corte inferior para ulteriores procedimientos no inconsistentes con esta opinión.*