Alfonso de Cumpiano, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
I
La controversia medular que plantean los recursos de epígrafe es si el Municipio de Carolina (el *870 Municipio) tiene facultad en ley para expropiar un terreno en dicho municipio perteneciente a la Compañía de Fomento Industrial de Puerto Rico.
El tribunal recurrido, en su resolución y orden, interpretó las disposiciones legales correspondientes de la Ley de Municipios Autónomos, junto a otras fuentes legales y concluyó que el Municipio tenía el poder de expropiación cuestionado y que existía un fin público para sostener esa determinación.
La Compañía de Fomento Industrial (Fomento), el Estado Libre Asociado de Puerto Rico (el E.L.A.) y Sembler Center, Inc. (Sembler) presentaron los recursos que consolidamos en los que cuestionan la resolución del tribunal bajo diversos argumentos, pero básicamente se refieren a la procedencia legal de la expropiación. Expedimos los recursos a los únicos fines de atender la controversia sobre la facultad del Municipio de expropiar el terreno en cuestión. Luego de considerar los planteamientos de las partes, los voluminosos expedientes, los fundamentos de la resolución recurrida y el derecho aplicable, interpretamos, contrario al tribunal de instancia, que la ley no confiere, ni cabe conceder la facultad cuestionada, por lo que procede revocar el dictamen. Nos basamos en los fundamentos expuestos a continuación.
El Municipio presentó el 12 de septiembre de 1997 ante la Sala de Expropiaciones de San Juan del Tribunal de Primera Instancia, una petición de expropiación forzosa por cuenta propia de un predio de terreno de aproximadamente doce (12) cuerdas sito en Isla Verde, Carolina. El terreno pertenecía a Fomento. Conforme los procedimientos aplicables, el Municipio presentó la declaración de adquisición y consignó la cantidad de siete millones seiscientos mil dólares ($7,600,000.00). El uso. a que se dedicaría el terreno expropiado se expresó por el Municipio que es la construcción de uh Centro de Servicios Múltiples. El título absoluto de dominio quedó investido en el Municipio^ ordenándose la entrega inmediata de la posesión material del terreno y la inscripción en el Registro de la Propiedad. El derecho a la justa compensación quedó investido en las personas correspondientes, conforme dispone la Ley General de Expropiación Forzosa bajo los trámites de rigor.
Fomento presentó moción de desestimación y solicitud de sentencia declaratoria, en la que alegó que la Ley de Municipios Autónomos no le confería al Municipio la facultad expresa de expropiar terrenos públicos pertenecientes a Fomento. El E.L.A y Sembler, una corporación que tenía un derecho de opción a la compra del terreno expropiado, intervinieron como partes interesadas con argumentos también en contra de la facultad de expropiación del Municipio.
II
El tribunal de instancia consideró los argumentos de las partes en una vista y sus respectivos memorandos y emitió la resolución recurrida, en la que desestimó los planteamientos de Fomento, del E.L.A. y de Sembler. Resolvió, conforme su análisis de diversas disposiciones legales, que el terreno expropiado era un bien patrimonial de Fomento, no dedicado a uso público al momento de la expropiación, que los municipios tenían el poder de expropiar bienes patrimoniales de corporaciones públicas, que había un fin público del Municipio y que, por tanto, procedía la expropiación en este caso.
Dispuso la continuación de los trámites ante dicho foro para dilucidar la compensación y su distribución.
III
El análisis legal efectuado por el tribunal expone las disposiciones legales referentes a algunos de los planteamientos que suscita la controversia pero, a nuestro juicio, contiene una interpretación insostenible en cuanto al reconocimiento de las facultades de expropiación del Municipio bajo la Ley de Municipios Autónomos y otras leyes. Veamos.
-A-
Ambito y alcance de la autonomía municipal
Es necesario, en primera instancia, enmarcar nuestro análisis legal en las bases conceptuales de la reforma municipal llevada a cabo por la Asamblea Legislativa al adoptar la Ley de Municipios Autónomos, Ley Núm. 81 de 30 de agosto de 1991, según enmendada, 21 L.P.R. A. sees. 4001-4990. *871 El ámbito y alcance de esa ley, en primer lugar en términos generales y en segundo lugar en términos más específicos, nos brindará el trasfondo para resolver si la facultad de expropiación de los municipios abarca el ejercerla en la propiedad de una corporación súplica como la de Fomento en este caso.
La Ley de Municipios Autónomos fue adoptada en 1991 con el propósito de otorgar a los municipios un mayor grado de autonomía fiscal y de gobierno propio con la capacidad fiscal necesaria para continuar atendiendo sus tareas, asumir nuevas funciones que les delegue el Gobierno Central y ofrecer servicios que no estaban asequibles a sus habitantes.

"Exposición de Motivos, Ley Núm. 81, supra:

Desde sus inicios, la ley estableció un régimen específico sobre los nuevos poderes y funciones otorgados a los municipios con enfoque de carácter expansionista. Enmiendas posteriores a 1991 delimitaron el ámbito de la reforma municipal, incluyendo la declaración de política pública según originalmente dispuesta en el artículo 1.002 de la Ley Núm. 81. Mediante la Ley Núm. 84 del 29 de octubre de 1992, se enmendó la Ley de Municipios Autónomos para aclarar el alcance de varias disposiciones, corregir errores y añadir nuevas disposiciones, todo ello para facilitar la filosofía de mayor autonomía en la gestión gubernamental administrativa. Exposición de Motivos, Ley Núm. 84, supra. En lo que nos concierne respecto a los propósitos de la Ley Núm. 81 de 1991, no se introdujo canjfJio en cuanto a su declaración de propósitos. Es con esta ley enmendatoria Núm. 84 de 1992 que se incluyen cambios en las disposiciones sobre expropiación forzosa, como veremos más adelante."

La Ley Núm. 36 de 13 de abril de 1995 enmendó el Artículo 1.002 sobre declaración de política pública para disponer:

"La transferencia de poderes y competencias se dará en forma ordenada, gradual y cónsona con las capacidades de los gobiernos municipales para absorber nuevas responsabilidades y funciones. Este proceso debe darse en armonía con la implantación de la política pública que rige la operación y administración de los servicios a la comunidad de Puerto Rico en general canalizada a través de las agencias del Gobierno Central y mediante una coordinación articulada con los gobiernos municipales. El mismo deberá propender a la ampliación del marco de acción del municipio a áreas que hasta el presente le estaban vedadas o grandemente limitadas, propulsando la Reforma Municipal y facilitando la reestructuración del Gobierno Central. Esta ley garantiza a los ciudadanos un gobierno municipal efectivo, que responderá a sus necesidades y aspiraciones. 21 L.P.R.A. nota sección 4001, en Supl. 1998."

Debemos resaltar que mediante la enmienda a la declaración de política pública incluida en el artículo 1.002, supra, se insertaron los conceptos sobre armonía, canalización y coordinación entre el Gobierno Central y el Municipal subrayados en la citada disposición. Además, se eliminaron las expresiones que citamos a continuación en tomo a que la transferencia de poderes y competencias lo fuera "junto con la reducción de la intervención del Gobierno Central en asuntos municipales" y que la ampliación del marco de acción del Municipio propulsaría una reforma municipal y "como consecuencia, una reestructuración del Gobierno Central". Artículo1.002, Ley Núm. 81, supra, 21 L.P.R.A. nota sección 4001, Tomo 1995. En los informes de comisiones legislativas que recomendaron la medida que culminó en la aprobación de la Ley Núm. 36 de 1995, se puntualizó que las enmiendas a la declaración de política pública tenían como propósito establecer la implantación de la reforma de manera ordenada y gradual y en armonía con la política pública del Gobierno Central expresada a través de las agencias gubernamentales Se expresó también que la coordinación de transferencia de poderes lo fuera sin "dislocar la estructura administrativa y operacional del gobierno central." Informe del Sustitutivo al P. de la C. 627 de la Comisión de Asuntos Municipales, 9 de mayo de 1994, pág. 16.
En consonancia con la visión armónica entre los gobiernos central y municipal, la Ley Núm. 36 de 1995 enmendó también el Artículo 1.004 de la Ley Núm. 81, respecto a las normas de interpretación de ésta para disponer que se interpretará liberalmente dicha ley para propiciar la implantación de su política pública con la directriz de que ello sea "en armonía con la buena práctica de política pública fiscal y administrativa." 21 L.P.R.A. sec. 4002 (Supl. 1998).
*872 Otras disposiciones de la Ley de Municipios Autonómos reconocen que las facultades de los municipios no son irrestrictas, tales como los artículos 1.005 y 1.006 que preceptúan que la autonomía municipal esta subordinada y será ejercida conforme a la Constitución del E.L.A. y a su leyes. 21 L.P.R.A. secs. 4003 y 4004.
También, el Artículo 3.005 de dicha ley dispone que los planes de ordenación para el territorio municipal deberán ser elaborados por el municipio: "en estrecha coordinación con la Junta de Planificación y con otras agencias públicas concernidas para asegurar su compatibilidad con planes estatales, regionales y de otros municipios y que dichos planes estarán de conformidad con todas las políticas, leyes, reglamentos u otros documentos del Gobierno Central relacionados a la ordenación territorial y ala construcción." 21 L.P. R.A. sec. 4609.
Además, conforme el Artículo 13.016, la Junta de Planificación tiene jurisdicción para anular determinaciones de los municipios autónomos que hayan sido tomadas, en el ámbito de las facultades que el Gobierno Central les transfirió. 21 L.P.R.A.sec. 4614. Recientemente, el Tribunal Supremo resolvió que previo a la anulación que permite la ley, la Junta de Planificación tiene que notificar al municipio y darle la oportunidad de ser oído en vista, en cumplimiento con el debido proceso de ley. Gobierno Municipal Autónomo de Ponce v. Junta de Planificación, _D.P.R. _ (1998), 98 J.T.S. 120, pág 92.
Como ejemplo final, aunque no exhaustivo, el Artículo 12.002 mantuvo la jurisdicción apelativa de la Junta de Apelaciones del Sistema de Administración de Personal, lo que presenta una situación excepcional en relación con las exclusiones de las instrumentalidades públicas de la Ley de Personal 21 L.P.R.A. sec. 4552; Rivera v. Municipio de Guaynabo, 141 D.P.R. _ (1996); 96 J.T.S. 101, pág 1362.
Debido al equilibrio entre los dos poderes conforme las disposiciones legales reseñadas, concluimos que el ámbito y alcance de la autonomía municipal, según esbozados por la Ley Núm. 81 enmendada en 1995 comprende la garantía a los municipios de facultades en el orden jurídico, fiscal y administrativo para atender las necesidades y el bienestar de sus habitantes, en armonía con las facultades del Gobierno Central a ser ejercidas bajo el ordenamiento constitucional y legal imperante. Es evidente que se reafirma y se reconoce de manera implícita en esa medida reformista que el andamiaje legal de la autonomía municipal se estructura bajo el carácter de los municipios como criaturas legislativas preceptuado en el Artículo VI, sec.l de la Constitución del E.L.A.
Bajo ese marco conceptual, consideremos la facultad legal de expropiación del Municipio y su desarrollo legislativo
-B-
E1 poder de expropiación forzosa del Municipio
Conviene repasar el desarrollo legislativo respecto a la forma, procedimientos y poderes de los municipios para ejercer la expropiación forzosa. Como trasfondo, vale tener presente que por disposición constitucional la autoridad del Estado para expropiar está limitada por la exigencia de que la propiedad sea para un fin público y se pague justa compensación.
Artículo II, sec.9 de la Constitución del E.L.A.; Culebra Enterprises et als. v. E.L.A., _ D.P.R. _ (1997), 97 J.T.S. 128, pág. 107. Este mandato constitucional se habilita mediante la Ley de Expropiación Forzosa de 12 de marzo de 1903, según enmendada, 32 L.P.R.A. sees. 2901 y ss. Así también, cabe reconocer que la facultad de expropiar reposa en el Estado, pero éste puede utilizarla indirectamente mediante la creación por la Legislatura de una entidad corporativa, la cual actuará por delegación de dicho poder. La corporación que actúe por delegación del Estado estará sujeta a las mismas limitaciones que éste, a saber, que medie un fin público y la justa compensación. Para la delegación es necesario que la Legislatura especifique las ocasiones, la forma y manera en que puede recurrirse a la expropiación y las agencias que pueden hacer uso de ese poder extraordinario. Autoridad Sobre Hogares de P.R. v. Corte, 68 D.P.R. 54, 60 (1948).
La Ley Orgánica de Municipios, Ley Núm. 146 de 18 de junio de 1980, que fue derogada por la Ley *873 Núm. 81, supra, reconocía en su Artículo 2.04(3) el ejercicio de los municipios dentro de sus límites territoriales del poder de expropiación para fines públicos. 21 L.P.R.A. sec. 2054 (1988). En su artículo 8.15 disponía sobre el procedimiento del municipio instado por el Gobernador. 21 L.P.R.A. sec. 3265 (1988).
La Ley de Municipios Autónomos, según originalmente adoptada, no cambió las disposiciones entonces vigentes sobre expropiación forzosa de los municipios. Fue la Ley Núm. 84 de 1992 que la enmendó para disponer que los municipios podrían alternativamente instar por su cuenta un procedimiento de expropiación sin la intervención del Gobernador. Así, dicha ley enmendó el Artículo 2.001 de la Ley de Municipios Autónomos para facultar a los municipios a ejercer el poder de expropiación forzosa, sin la intervención del Gobernador, pero únicamente para adquirir bienes ubicados en sus límites territoriales. En los demás casos, se requiere la intervención del Gobernador. En el artículo 10.002, se reconoció por la Ley Núm. 84 ese poder de adquirir por expropiación forzosa, y en el artículo 10.003, se estableció el procedimiento a seguir por los municipios al ejercer el poder de expropiación por cuenta propia, adicionado al que se sigue cuando los municipios solicitan al Gobernador que inste procesos de expropiación. 21 L.P R.A. secs. 4051; 4452; 4453 (1995).
Salvo por la indicación que la facultad del municipio de expropiación lo es para fines públicos, y dentro de sus límites territoriales, nada hay en el historial legislativo de la ley enmendatoria que examinamos que indique que esa facultad puede ejercerse en bienes pertenecientes al Estado o a corporaciones públicas. Ni en los informes legislativos, ni en los debates sobre el P. de la C. 1626 que culminó en la Ley Núm. 84, se expresó intención alguna al respecto. La enmienda sobre el ejercicio de la expropiación forzosa por los municipios por cuenta propia, surgió de la recomendación de la Comisión del Senado que estudió e informó la medida. Véase Informe de la Comisión de Desarrollo Socioeconómico de Corporaciones y Municipios del Senado en tomo al P. de la C. 1626, de lro. de octubre de 1992, págs. 81; 97-98.
Con posterioridad a haberse dictado la resolución recurrida en este caso, se aprobó la Ley Núm. 121 de 11 de julio de 1998 para, entre otros asuntos, enmendar las disposiciones de la Ley de Municipios Autónomos sobre el poder de expropiación forzosa de los municipios. Se nos plantea por el Municipio que las disposiciones de esta reciente ley no deben ser tomadas en cuenta en este recurso por no ser aplicables, ya que dicha ley fue aprobada luego de que se había emitido la resolución recurrida. Como veremos más adelante, durante los debates de esa medida legislativa se planteó por un legislador que su intención era afectar este pleito. Es claro que si esa fuera la intención, es improcedente considerarla para resolver este caso, toda vez que está resuelto que el permitir que la Rama Legislativa dicte a la Judicial el resultado a seguir en cuestiones específicas ante los tribunales, sería aprobar la usurpación de la función judicial.
Misión Industrial de P.R., Inc. et als. v. Junta de Planificación et als., _ D.P.R. _ (1998); 98 J.T.S. 79, págs. 1148, 1153; Banco Popular v. Corte, 63 D.P.R. 66, 82 (1944). Consideramos que es innecesario entrar en los aspectos sobre la aplicación de la Ley Núm. 121 de 1998 a nuestro caso; no obstante, examinaremos su historial legislativo a los fines de investigar si existe alguna indicación en éste que implique una variación de previa intención legislativa sobre el poder de expropiación forzosa de los municipios sobre bienes de corporaciones públicas.
Las enmiendas efectuadas por la Ley Núm. 121 de, 1998 específicamente disponen que los municipios no poseen poder de expropiación por sí contra el Gobierno Central, sus instmmentalidades y corporaciones públicas. Esto es así aún en el caso en que la propiedad haya pertenecido a alguna de estas entidades durante los diez (10) años anteriores a la fecha de la solicitud de expropiación excepto cuando medie resolución conjunta de la Asamblea Legislativa. También disponen que la compra onerosa de un bien propiedad del Gobierno Central, de sus instrumentalidades o corporaciones públicas, tiene que ser voluntaria y aprobada por el Gobernador. Artículos 2.001(c); 10.003; 10.004, 21 L.P.R.A. secs. 4051, 4453, 4454.
Como previamente señalado, nos interesa conocer si la intención del legislador al adoptar esta medida fue la de limitar un derecho de los municipios, el de expropiar propiedad de las corporaciones públicas, que se reconocía bajo la Ley Núm. 81, o la de aclarar que ese derecho no se reconocía bajo la ley y conceder transacciones entre ambos poderes por medio de una autorización de la Asamblea *874 Legislativa.
En primer término, el lenguaje de la exposición de motivos de la Ley Núm. 121 de 1998 es a los efectos de que se están ampliando los poderes anteriores poseídos por los municipios.
Dispone que se amplía el marco de poderes de adquisición de los municipios haciendo un paralelismo para que éstos puedan adquirir bienes del gobierno de todos los modos en que lo haría una persona privada, con la única excepción de que el paralelismo no se puede extender a la expropiación forzosa, ya que este medio no está ni puede estar, disponible a los municipios frente al Estado y sus agencias o corporaciones.
Conforme el Informe de la Comisión de Asuntos Municipales del Senado de 8 de abril de 1998 en tomo al P. del S. Núm. 969, que se convirtió en la Ley Núm. 121 el propósito del proyecto es aclarar la Ley de Municipios Autónomos de una parte para ampliar los modos en que los municipios pueden adquirir bienes del Estado, sus instrumentalidades y corporaciones públicas, y de otra, para evitar que se obvien los requisitos de ley en la adquisición de bienes del Estado por medio de transacciones intermedias de personas privadas, naturales o jurídicas. Expresa dicho informe que la medida va dirigida a autorizar a los municipios a adquirir bienes inmuebles del Gobierno Central, sus instrumentalidades y corporaciones públicas, "no sólo por donación gratuita, como hasta ahora, sino también por compra voluntariamente acordada entre el municipio y las entidades del Estado." Señala además que la prohibición de adquirir bienes del Estado y sus corporaciones sin aprobación del Gobernador, que existía en la ley, se aclara para incluir cualquier modo de adquirir, ya sea por título oneroso o gratuito, voluntario o por expropiación forzosa, además de los casos en que se utilice un tercero intermediario. Finalmente, el informe específicamente comenta la posición sobre la expropiación de bienes del Estado, y la rechaza, indicando que bajo la Ley de Expropiación "la expropiación forzosa es una acción contra la propiedad particular, no contra la propiedad del Estado."
La visión concluyente del informe es que para que un municipio adquiera bienes del Estado o sus corporaciones públicas, se requiere aprobación del Gobernador
Surge del historial legislativo del P del S 969, supra, que el portavoz de la minoría en el Senado, Hon. Antonio Fas Alzamora, reconsideró su votación, y propuso enmiendas sustanciales al proyecto. Estas iban dirigidas a eliminar lo referente a que los municipios no tenían la facultad de expropiar bienes del Estado, sus instrumentalidades y corporaciones públicas. Argumentó que, aunque el proyecto pretendía ampliar los poderes de los municipios, le quitaba poderes. Sugirió que se enmendara el proyecto para que los municipios pudieran expropiar bienes para uso público que el Gobierno Central deseara destinar a fines privados. Expuso que la medida pretendía influenciar un pleito judicial entre el Municipio de Carolina y la Compañía de Fomento. Discutió el caso que consideramos y planteó que el bien que se está expropiando era de absoluta propiedad privada como cualquier otro, y que no le cabía la menor duda que el municipio podía expropiar cualquier bien o propiedad privada, a base de su interpretación de la Ley de Municipios Autónomos. Las enmiendas propuestas fueron derrotadas. Discusión del P. del S. 969, Sesión del Senado el día 18 de mayo de 1998. 
Del recuento legislativo que se ha formulado se colige que la Ley de Municipios Autónomos según aprobada en 1991, proveyó mayor autonomía a los municipios, pero no insertó cambios en cuanto al modo de expropiación forzosa de éstos por medio del Estado. La Ley Núm. 84 de 1992 introdujo como cambio significativo la facultad de los municipios de instar procedimientos de expropiación, sin la mediación del Gobernador. Este poder se circunscribió específicamente a sus límites territoriales, y se rechazó la propuesta de que pudiera el municipio expropiar en otro municipio, salvaguardando así la armonía gubernamental que permea la ley. Ni en la ley original, ni en su historial legislativo, surge la intención legislativa de facultarlos a expropiar bienes patrimoniales de corporaciones públicas. Por otra parte, en el récord legislativo de la Ley Núm. 121 de 1998 no existe evidencia alguna de que se haya variado una facultad existente de expropiación forzosa de bienes patrimoniales de corporaciones públicas. Las argumentaciones en defensa de ese poder, se basan en interpretaciones en cuanto a que la ley original no estableció límites respecto a la propiedad privada, que incluye la patrimonial del Estado, y en el alcance que debía otorgarse a la autonomía municipal. Sustentan más bien la posición *875 que era necesaria una enmienda para otorgar la facultad de expropiar bienes públicos que se fueran a destinar a fines privados.
En otras palabras, el tracto legislativo de las facultades de expropiación forzosa de los municipios no sostiene de manera alguna que la Legislatura invistió o pretendió investir a los municipios del poder de expropiar bienes públicos o los pertenecientes a corporaciones públicas y que luego lo limitó.
No contamos en nuestra jurisdicción con jurisprudencia del Tribunal Supremo, ni con comentarios de estudiosos de la reforma municipal sobre la facultad de expropiación de los municipios respecto a bienes patrimoniales o de naturaleza pública, aunque sí ha habido abundante discusión sobre los propósitos, fundamentos, naturaleza y alcances de dicha reforma. Santana Rabell, Negrón Portillo, La Reforma Municipal en Puerto Rico, Retos y Oportunidades, 2da ed. rev. Puerto Rico Esc. Grad. Adm. Pública, 1995; Veanse también varios artículos sobre el tema en Reforma Municipal y Planificación, Plerus, Vol. XXIII-XXIV (1992-1995).
En la jurisdicción norteamericana, ha habido consideración de alguna relevancia al tema. Ambas partes presentan jurisprudencia estatal y federal, que no es aplicable a nuestra situación particular y es distinguible, más brindan enfoques a tomar en cuenta. Los casos de City of East Peoria v. Group Five Dev. Co., 429 NE 2nd 492 (1981) y Minnesota Power & Light Co. v. State, 225 NW 164 (1929), invocados por el tribunal para resolver que no es necesaria delegación expresa para expropiar bienes patrimoniales del Estado no resuelven esa cuestión. En el primero, la ley autoriza expresamente a la ciudad a expropiar propiedad de naturaleza pública. En el segundo, se determina que no había autorización legal expresa para expropiar por una corporación parte de un parque estatal para una servidumbre, y ningún fin público para ello.
Los casos más relevantes han sido objeto de comentarios ilustradores, resumidos a continuación. A juicio del reconocido tratadista Nichols, las disposiciones legales que delegan el poder de expropiación del soberano a otras entidades deben ser interpretadas restrictivamente y las facultades que no le hayan sido claramente delegadas, se entienden denegadas. Plantea que si el ente que pretende expropiar es uno al que dicho poder le ha sido delegado, como una municipalidad o una corporación privada, y pretende expropiar propiedad que ya está dedicada a uso público, la regla general es que si el uso propuesto destruiría o interferiría demasiado con el uso existente, la expropiación debe ser denegada a menos que la Legislatura lo autorice expresamente o por implicación necesaria. Tal adquisición no puede llevarse a cabo bajo una delegación general del poder de expropiar, a menos que pueda inferirse claramente de la naturaleza del proyecto propuesto y de la imposibilidad de realizarlo sin obstruir el otro, que la Legislatura quiso autorizar la expropiación. Esta norma es aplicable también a propiedad perteneciente al Estado aunque no se esté dedicando a uso público. En cuanto al aspecto específico de la adquisición por un municipio de propiedad estatal, concluye dicho tratadista que no puede darse bajo una delegación general del poder de expropiar; debe delegarse ese poder expresamente o por implicación necesaria. Nichols, Philip, Nichols On Eminent Domain, 3ra ed., New York, Mathew Bender, 1998, Vol. 1A págs. 2-57, 2-58, 2-65, 3-119; véase también Sutherland, Jabez Gridley, Statutes and Statutory Construction, 5ta Ed, New York, Callaham & Company, 1992, vol. 3, págs. 260, 284.
Es nuestro parecer que tratándose en este caso de un poder tan extraordinario, no podemos inferir que la Legislatura lo contempló, pero sin hacer expresión explícita o reconocomiento de su alcance. Coincidimos con el enfoque que el poder de expropiación forzosa sobre bienes de naturaleza pública o investidos de interés público, debe estar basado en expresión de ley o en clara intención legislativa necesariamente derivada de su historial. Ninguna de esas circunstancias está presente en este caso.
-C-
Naturaleza de los bienes expropiados
Nos resta considerar si, independientemente de lo que hemos dispuesto, los bienes expropiados, por ser patrimoniales, pueden ser objeto de expropiación por el Municipio.
Para concluir que los bienes de Fomento aquí en controversia podían ser expropiados por el Municipio, el tribunal efectuó un análisis de su naturaleza, utilizando varias disposiciones de leyes *876 que procedemos a señalar. La Ley de Expropiación Forzosa, supra, en su sección 2, 32 L.P.R.A. sec. 2902, preceptúa que podrán ser expropiadas la propiedad particular, como también la definida en el artículo 256 (antes artículo 328) del Código Civil. Este último artículo dispone:

"Son bienes de uso público en Puerto Rico y en sus pueblos, los caminos estaduales y los vecinales, las plazas, calles, fuentes y aguas públicas, los paseos y las obras públicas de servicio general, costeadas por los mismos pueblos o con fondos del tesoro de Puerto Rico.

Todos los demás bienes que el Estado Libre Asociado de Puerto Rico o los municipios posean, son patrimoniales y se regirán por las disposiciones de este título. 31 L.P.R.A. 1025."

El principio de que los bienes patrimoniales del Estado son bienes de propiedad privada, se reitera en el artículo 257 del Código Civil, 31 L.P.R.A. sec.1026.
Para hallar la facultad que reconoció al Municipio, el tribunal se basó en el lenguaje general del artículo 10.002, supra, en el artículo 1.004 sobre interpretación liberal de los poderes municipales como leía antes de 1995 cuando se introdujo el concepto de armonía con la buena práctica de política pública, fiscal y administrativa y en las disposiciones sobre bienes de naturaleza patrimonial. Determinó que el Municipio tenía un fin público para el terreno. Descartó la necesidad de un poder expreso para que una corporación pública expropiase bienes de otra instrumentalidad.
Conviene reseñemos la naturaleza y funciones de Fomento, con el propósito de auscultar la naturaleza de bienes como el expropiado. Fomento es una corporación pública que se creó con el propósito de implantar un plan de reconstrucción económica para el beneficio general de Puerto Rico por medio de la revelación y desarrollo de los recursos económicos y humanos del E.L.A., puesto en práctica a través de su aspecto industrial. Ley de la Compañía de Fomento Industrial, artículo 6(b), 23 L.P.R.A. see. 273, (Supl. 1998). Su ley habilitadora faculta a Fomento para alentar, persuadir, promover e inducir al capital privado a iniciar y mantener operaciones, incentivar la inversión en. sectores de manufactura, servicios y otros. Artículos 8 y 9, 23 L.P.R.A. sees. 275, 276. También le faculta a adquirir en cualquier forma legal, incluyendo expropiación forzosa, cualquiera bienes que considere necesarios o convenientes para realizar sus fines, excepto edificaciones que estén siendo operadas de buena fe por empresas de naturaleza comercial industrial o agrícola, además de tener la facultad de enajenar y disponer de sus propiedades como ella prescriba. Todos los bienes que Fomento interese adquirir son declarados por su ley habilitadora como de utilidad pública, así como todo derecho o interés sobre los mismos, por lo que no será necesaria una declaración de utilidad pública adicional en caso de expropiación por Fomento. Artículo 10, 23 L.P R.A. sec.278(g) y (o).
Aunque la antes aludida disposición se refiere a la caracterización de bienes de utilidad pública para fines de expropiación, los bienes de Fomento destinados al cumplimiento de sus fines o propósitos gozan también de la naturaleza de utilidad pública. Es ese concepto uno amplio, que comprende el bienestar común desde diversas perspectivas. Las funciones de Fomento están estrechamente ligadas a la posesión y venta de terrenos a personas privadas. Se ha resuelto que el hecho de que al implantar su política pública reciban beneficio o utilidad personas o entidades privadas a quienes se les venda o arriende propiedades, es uno puramente incidental al fin público que persigue la ley y que la enajenación de aquellos terrenos necesarios para llevarlo a efecto, aunque su uso inmediato sea uno privado, no justifica la decisión de que se trata de un fin o uso exclusivamente privado. E.L.A. v. Fajardo Sugar Company, 71 D.P.R 321, 331-336 (1956).
Así pues, aun cuando los bienes de Fomento gocen del carácter de bienes patrimoniales bajo el Código Civil, no dejan de tener carácter de utilidad pública, cuando se destinan a los fines que motivó la creación de esa eorporación pública. Si un bien de su propiedad está dedicado o se propone dedicar al cumplimiento de su fin público, es asunto estrechamente vinculado a sus potestades de ley. Por tanto, es insostenible utilizar su clasificación como bien patrimonial, para determinar qué es expropiable.
El uso que pretende dar el Municipio al terreno ciertamente abarca un fin público; pero la propiedad en disputa de Fomento no necesariamente ha dejado de ser de utilidad pública, por haberse contemplado su transferencia a manos privadas. En las circunstancias de este caso, no nos compete *877 determinar cuál beneficio público supera al otro.
IV
En conclusión, el análisis efectuado por el tribunal recurrido no puede prevalecer para otorgar al Municipio el poder de expropiación del terreno en cuestión porque: primero, ni en la Ley de Municipios Autónomos, ni en su historial legislativo, se contempló la situación del alcance del poder de expropiación de un municipio sobre un bien de una corporación pública destinado al cumplimiento de sus funciones; segundo, el choque de una entidad municipal frente a una corporación pública, en cuanto a la jerarquía de los fines públicos de sus bienes, está en contra de los claros y reiterados principios armónicos entre los poderes estatales y municipales que permean la Ley de Municipios Autónomos; tercero, la clasificación de un bien de una corporación pública como bien patrimonial por las disposiciones civilistas, no excluye su carácter de utilidad pública, cuando se destina al cumplimiento de un fin público amparado en ley.
La situación que plantea este recurso, que en última instancia se refiere al enfrentamiento de dos entidades públicas por su apreciación de lo que mejor conviene a los intereses públicos, no puede resolverse mediante un reconocimiento judicial de una facultad no contemplada por la ley. La Ley de Municipios Autónomos contiene disposiciones que permiten transacciones de propiedades entre el Estado, sus instrumentalidades y los municipios, que presuponen se efectúen tomando en cuenta los mejores intereses del pueblo, bajo la guía armónica entre ambos poderes que dispone dicha ley.
En virtud de todo lo anterior, habiéndose expedido los recursos, se revoca la resolución y orden recurrida y se dejan sin efecto las actuaciones que surgen de ésta. El tribunal de instancia deberá dictar las órdenes para dejar sin efecto las providencias judiciales que se han emitido, o cualesquiera otras que sean necesarias, en virtud de lo aquí resuelto.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General